**Barbara HOLDER–McDONALD and Michael McDonald, Appellants,**

v.

**CHICAGO TITLE INSURANCE COMPANY, Appellee.**

No. 05–05–00094–CV.

Court of Appeals of Texas, Dallas.

Feb. 8, 2006.

Rehearing Overruled April 18, 2006.

Frank L. Broyles, Goins, Underkofler, Crawford & Langdon, Dallas, for appellants.

Richard Dwayne Danner, Irving, for appellee.

Before Justices MORRIS, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice MORRIS.

In this appeal following a jury trial, Barbara Holder–McDonald and Michael McDonald challenge the trial court's directed verdict on their claim for breach of fiduciary duty against Chicago Title Insurance Company. The McDonalds further challenge the trial court's denial of their motion for new trial on the issue of damages and contend there is an irreconcilable conflict in the jury's answers to two liability questions. We conclude the McDonalds' arguments are without merit and we affirm the trial court's judgment.

### I.

In June 1997, Barbara Holder–McDonald and her husband Michael McDonald signed an earnest money contract for the purchase of a home in Frisco, Texas. Chicago Title Insurance Company was chosen as the title insurer, and Judi Coker, an employee of Chicago Title, was named as the escrow agent and closer for the purchase.

Chicago Title prepared a title commitment, including a legal description of the metes and bounds of the property being purchased. The title examiner identified three different tracts as part of the property. Tract 1 was a fee simple tract on which the house and a barn were located. Tracts 2 and 3 were described as easement estates.

Tract 2 was identified as an easement running from the northwest side of tract 1 to a public roadway known as Wimbledon Court. The address of the house was listed as 4 Wimbledon Court, and the tract 2 easement was the only part of the property described in the title commitment that connected the house to Wimbledon Court. There was no driveway or other form of access on the easement, however. Instead, the house was accessed from Wimbledon Court by use of a neighbor's driveway. The McDonalds knew at the time they purchased the property that use of the neighbor's driveway was an at-will courtesy and their purchase of the property did not include any rights to the neighbor's driveway.

Tract 3 was described as an easement running from the southeast side of the property to another neighbor's driveway. This second driveway ran to a different public roadway and was accessible from tract 1 only by crossing a creek or using a narrow footbridge across the creek.

After purchasing the property, the McDonalds made substantial renovations and

improvements to the home. The Mc-Donalds funded these renovations by refinancing the property three times. Each time the McDonalds refinanced, Chicago Title acted as both the title insurer and the closer. During the time the McDonalds lived on the property, they never attempted to use the tract 2 easement but instead continued to use the neighbor's driveway to access the house from Wimbledon Court. In fact, part of the renovations to the home included a new driveway that connected the house with the neighbor's driveway to Wimbledon Court.

After making the renovations, the Mc-Donalds began to have financial difficulties and decided to sell the property. Despite their attempts to sell, the couple could not find a buyer. Eventually the McDonalds were unable to make payments on their mortgage and in May 2002, the lender foreclosed.

Approximately two weeks before the foreclosure, the McDonalds learned there was a problem with the tract 2 easement. It was discovered that the easement had expired by its own terms many years before the McDonalds purchased the property. Because the easement no longer existed, the McDonalds' property did not include a legal right of access to and from Wimbledon Court. The property was sold at the foreclosure sale as scheduled. No deficiency was taken against the Mc-Donalds as a result of the foreclosure. The McDonalds conceded they never discussed the expiration of the easement with Chicago Title before the foreclosure.

After the foreclosure, the lender made a claim against Chicago Title under its mortgagee's title insurance policy based on Chicago Title's mistaken representation that the property included an easement to Wimbledon Court. Chicago Title resolved the lender's claim by purchasing an easement across the neighbor's driveway to Wimbledon Court. Although the Mc-Donalds no longer owned the property, they filed suit against various parties, including Chicago Title, alleging various claims. These included negligent misrepresentation, breach of fiduciary duty, breach of contract, and violations of the Texas Deceptive Trade Practices Act. All of the McDonalds' claims were based on the company's representation that the subject property included an easement to Wimbledon Court. According to the Mc-Donalds, but for that representation, they would not have purchased the property.

In October 2004, a jury trial took place with Chicago Title as the sole remaining defendant in the case. Chicago Title moved for and received a directed verdict in its favor on the McDonalds' claim for breach of fiduciary duty. On the remaining claims, the jury found that Chicago Title had made a negligent misrepresentation but that it had not breached its contract with the McDonalds nor violated the DTPA. The jury awarded the McDonalds $4,658.83 in damages resulting from the misrepresentation. The jury further found, however, that Chicago Title did not act with malice and the misrepresentation did not cause any difference in the value of the property to the McDonalds compared to the price the McDonalds paid for it.

The McDonalds moved for a new trial arguing the jury's findings on damages were against the overwhelming weight of the evidence and its failure to find that Chicago Title had violated the DTPA conflicted with its findings of misrepresentation. The trial court denied the motion and the McDonalds brought this appeal.

## II.

■ In their first issue on appeal, the McDonalds contend the trial court erred in granting a directed verdict on their claim for breach of fiduciary duty. We note

that, in this case, any fiduciary duties Chicago Title owed to the McDonalds were not owed in its capacity as title insurer. Rather, the fiduciary duties owed by Chicago Title arose solely out of its employee's role as escrow agent and closer for the purchase of the property. An escrow agent owes fiduciary duties to both the buyers and the sellers of the property, including the duty of loyalty, the duty to make full disclosure, and the duty to exercise a high degree of care to conserve the money placed in escrow and pay it only to those persons entitled to receive it. *See Bell v. Safeco Title Ins. Co.,* 830 S.W.2d 157, 161 (Tex.App.-Dallas 1992, writ denied). But these duties are strictly limited to the agent's role as escrow agent. *See Equisource Realty Corp. v. Crown Life Ins. Co.,* 854 S.W.2d 691, 697 (Tex.App.-Dallas 1993, no writ). Accordingly, when examining the McDonalds' claim for breach of fiduciary duty, we must focus exclusively on Chicago Title's actions and obligations as escrow agent and not its separate actions and obligations as title insurer. *See Chicago Title Ins. Co. v. Alford,* 3 S.W.3d 164, 167 n. 2 (Tex.App.-Eastland 1999, pet. denied) (issuance of title insurance should not be confused with closing of real estate transaction).

■ The McDonalds assert that Chicago Title breached its fiduciary duties to them when it attached an incorrect legal description of the property to the closing documents. The McDonalds argue that attaching an incorrect legal description constituted a breach of fiduciary duty because it violated the mortgage loan closing instructions that defined Chicago Titles' obligations as escrow agent. We disagree.

The McDonalds rely heavily on one portion of the loan closing instructions found in the section entitled "Additional Closing Conditions and Requirements." Subsection 11 of that section states:

Title Company to determine which metes and bounds are correct (title commit. or survey)—correct other accordingly—attach correct and legible copy of Exhibit "A" to all legal docs. referencing legal description, including tax information sheet.

The McDonalds contend that because Chicago Title, in its role as escrow agent, attached a legal description of the property to the closing documents that erroneously stated the property included an easement to Wimbledon Court, Chicago Title violated its duty to attach a "correct" legal description to the closing documents. The McDonalds' interpretation of subsection 11 implies the escrow agent has an independent duty to verify the correctness of the metes and bounds determination made by the title company. This is clearly not what subsection 11 means.

Subsection 11 recognizes that the burden of determining the correct metes and bounds of the property lies with the title company. The escrow agent's sole responsibility under the subsection is to obtain the correct legal description, as determined by the title company, and attach a legible copy to all the legal documents referencing the description. To conclude otherwise would convert the contractual obligation of the title company to indemnify its insured into a fiduciary duty of the escrow agent. The escrow agent would, in essence, become a second title insurer with unlimited liability. The McDonalds cite no law to support their contention that an escrow agent has an independent duty to determine the correctness of a legal description provided by a title company and we decline to extend an escrow agent's potential liability in this way.

Although Chicago Title acted as both title insurer and escrow agent in this case, there is no evidence in the record that Chicago Title had any knowledge of the

error in the legal description when it conducted the original closing or the subsequent refinancings on the McDonalds' property. Absent such knowledge, Chicago Title could not have breached its fiduciary duty of full disclosure by failing to disclose the problem with the easement.

■ The McDonalds further contend Chicago Title breached its fiduciary duty as escrow agent by preparing and presenting them with an affidavit signed by the sellers stating that they did not know of any other person claiming any part of the property under any color of title. Attached to the affidavit was a legal description of the property that set out the metes and bounds of the three tracts. Missing from the legal description was the portion stating that only tract 1 was owned in fee simple. Therefore, the affidavit made it appear as if the sellers were stating under oath that they owned all three tracts in fee simple.

The evidence shows the affidavit was prepared by Chicago Title as part of its issuance of the title insurance policy, not as part of its duties as escrow agent at the closing. Accordingly, Chicago Title could not have breached a fiduciary duty to the McDonalds through its preparation of the affidavit. To the extent that Chicago Title may have "presented" the affidavit to the McDonalds by including it in the closing documents, the company did not violate its duty to make full disclosure because the McDonalds, before the closing, were told by Judy Coker, Chicago Title's employee, that the sellers did not own all three tracts in fee simple. In fact, Coker had one of the maps of the property changed to reflect the differences in the three tracts. The McDonalds point to no evidence showing the affidavit signed by the sellers played any role in the transaction. Accordingly, the affidavit could not form the basis of a claim for either a breach of Chicago Title's duty of loyalty or its duty to exercise a high degree of care to conserve the money placed in escrow and pay it only to those persons entitled to receive it.

Because the McDonalds failed to provide more than a scintilla of evidence to support their claim for breach of fiduciary duty, the trial court did not err in granting a directed verdict on this claim. We resolve the McDonalds' first issue against them.

The remaining claims against Chicago Title were negligent misrepresentation, violations of the DTPA, and breach of contract. Unlike the claim for breach of fiduciary duty, these claims were not directed at Chicago Title's actions as escrow agent. The sole claim upon which the jury found Chicago Title liable to the McDonalds was their claim for negligent misrepresentation. In their second issue on appeal, the McDonalds challenge the jury's award of damages arising from the misrepresentation. The jury instructions gave the jury two measures of damages: the difference, if any, between the value of the property received in the transaction and the purchase price given, and the pecuniary loss, if any, otherwise suffered as a consequence of the McDonalds' reliance on the misrepresentation. In response to the query about the difference in value, the jury answered there was no difference between the value of the property to the McDonalds and the purchase price they paid. The jury further found, however, that the McDonalds suffered $4,658.83 in pecuniary loss as a result of the misrepresentation. The McDonalds moved for a new trial arguing that the jury's findings on misrepresentation damages were insufficient and against the overwhelming weight of the evidence. The trial court denied the McDonalds' motion for new trial and the McDonalds contend the denial was in error.

■ At trial, the McDonalds presented the testimony of an appraiser who opined the value of the property without the easement to Wimbledon Court was $200,000 less than what the McDonalds paid for it. The McDonalds also testified that the existence of the easement was critical to their decision to purchase the property. Weighing against this evidence, however, was the McDonalds' admission that they never attempted to use the easement during the time they lived on the property. Furthermore, the McDonalds were completely unaware the property did not include the easement until immediately before they lost the property to foreclosure. The absence of the easement did not contribute to either the McDonalds' failure to make their mortgage payments or their inability to sell the property. At the foreclosure, no deficiency resulted from the fact that there was no easement to Wimbledon Court. Because the absence of the easement never impacted the value of the property to the McDonalds, we conclude the jury's finding of no damages arising from a difference in value is not against the great weight of the evidence.

■ The McDonalds also contend the jury's award of $4,658.83 for their pecuniary loss is entirely insufficient. Among the exhibits the McDonalds presented at trial was a listing of all the expenses they incurred associated with the property, including mortgage payments and renovation costs amounting to several hundred thousand dollars. The McDonalds contend all of these expenses were a result of Chicago Title's misrepresentation about the easement. The record also includes all the loan documentation from the McDonalds' initial purchase of the property and their subsequent refinancings, including an itemization of the fees paid to Chicago Title.

As discussed above, the evidence at trial showed that the absence of the easement did not impact the McDonalds' use and enjoyment of the property. And it did not contribute to the McDonalds' ultimate loss of the property to foreclosure. Although the McDonalds argue they would not have purchased the property but for the misrepresentation, they cannot retroactively blame their financial troubles arising from ownership of the property on a representation that never affected their ownership of the property. Despite the fact that Chicago Title's negligent misrepresentation did not impact the McDonalds' ownership of the property, the jury could reasonably conclude that some of the expenses the couple incurred were a result of their reliance on Chicago Title's misrepresentation. Accordingly, the jury was free to examine the evidence presented, including the itemized lists of expenses and costs, and determine which amounts were attributable to the misrepresentation. After examining the record, we conclude the jury's award of $4,658.83 is not against the great weight of the evidence. We resolve the McDonalds' second issue against them.

■ In their third issue, the McDonalds contend there is an irreconcilable conflict between the jury's finding that Chicago Title made a negligent misrepresentation and its failure to find that Chicago Title violated the DTPA. When determining whether jury findings irreconcilably conflict, we apply a de novo standard of review. *See Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980). The threshold question is whether the findings address the same material fact. *Id.* We may not strike jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled in light of the pleadings and evidence, the manner of submission, and the other findings consid-

ered as a whole. *See Ford Motor Co. v. Miles*, 141 S.W.3d 309, 314 (Tex.App.-Dallas 2004, pet. denied).

■ The material fact the McDonalds allege is central to both their negligent misrepresentation claim and their claim for violations of the DTPA is Chicago Title's erroneous statement that the property they purchased included an easement to Wimbledon Court. The jury instruction on negligent representation generally states that a negligent misrepresentation occurs when a party in the course of business supplies false information for the guidance of others and the party did not exercise reasonable care or competence in obtaining or communicating the information. Based on that definition, the jury concluded Chicago Title had made a negligent misrepresentation.

The jury instructions relating to the McDonalds' DTPA claim are far more specific than the instruction for the negligent misrepresentation claim.[1] The jury question on the DTPA claim asks if Chicago Title engaged in any unfair, false, misleading, or deceptive act or practice. The instruction then defines unfair, false, misleading, or deceptive act or practices as meaning any one of a list of numerous acts, the majority of which deal exclusively with the practice of insurance. The definitions that do not deal exclusively with the practice of insur-

---

1. The jury question asks the following:

Did Chicago Title Insurance Company engage in any unfair, false, misleading, or deceptive act or practice that Barabara J. Holder–McDonald and Michael H. McDonald relied on to their detriment and that was a producing cause of damage to Barbara J. Holder McDonald and Michael H. McDonald?

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produced damages, if any. There may be more than one producing cause.

"False, misleading, or deceptive act or practice" means any of the following:

Representing that services have characteristics, ingredients, uses, benefits, or quantities which they did not; or

Representing that services are of a particular standard, quality, or grade, if they were of another; or

Representing that an agreement confers or involves rights, remedies, or obligations which it did not have or involve; or

Failing to disclose information concerning services which was known at the time of the transaction with the intention to induce the recipient into a transaction he or she otherwise would not have entered into if the information had been disclosed.

"Unfair or deceptive act or practice" means any of the following:

Making or causing to be made any statement misrepresenting the terms, benefits or advantages of an insurance policy; or

Making, or directly or indirectly causing to be made, an assertion, representation, or statement with respect to insurance that was untrue, deceptive, or misleading; or

Misrepresenting to a claimant a material fact or policy provision relating to the coverage issue; or

Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear; or

Failing to provide promptly to Barbara J. Holder–McDonald and Michael H. McDonald a reasonable explanation of the factual and legal basis in the policy for an insurer's denial of the claim; or

Refusing to pay a claim without conducting a reasonable investigation of the claim; or

Making any misrepresentation relating to an insurance policy by:

a. making any untrue statement of a material fact; or

b. failing to state a material fact that is necessary to make other statements not misleading, considering the circumstances under which the statements are made; or

c. making any statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact.

ance address representations or failures to disclose information about an agreement or services rendered.

 The agreement between the McDonalds and Chicago Title was the title insurance policy. The services Chicago Title was to render the McDonalds under the policy were title defense and indemnification. *See Martinka v. Commonwealth Land Title Ins. Co.*, 836 S.W.2d 773, 778 (Tex.App.-Houston [1st Dist.] 1992, writ denied). Given these instructions, the jury could reasonably conclude that the sole transaction relevant to this question was the McDonalds' purchase of the title insurance policy, not their purchase of the underlying property. There is no evidence in the record that Chicago Title made any misrepresentations about its insurance policy or the services to be provided thereunder. To the extent the erroneous title description formed a part of the insuring agreement, the policy specifically states that the agreement is not intended to be an opinion or report on the title being covered, but is merely a contract of indemnity entitling the insured to payment or other action for a loss resulting from a covered risk.[2] The McDonalds never made a claim under the policy, and when a claim was made by the lender, Chicago Title resolved its obligations under the policy by purchasing an easement from the property to Wimbledon Court.

Because there is no evidence that Chicago Title committed any unfair, false, misleading, or deceptive act or practice in connection with its sale of title insurance to the McDonalds, the jury could find based on the evidence and manner the issue was submitted that Chicago Title did not violate any provision of the DTPA.

This finding does not irreconcilably conflict with the jury's finding that Chicago Title made a misrepresentation to the McDonalds in connection with their purchase of the property. We resolve the McDonalds' third issue against them.

We affirm the trial court's judgment.

---

2. Chicago Title argues that this language in the policy defeats both the McDonalds' claims for violations of the DTPA and negligent misrepresentation. Chicago Title, however, did not appeal the jury's finding on negligent misrepresentation, so we do not address the issue.