**HOME LOAN CORPORATION
d/b/a Expanded Mortgage
Credit, Appellant,**

v.

**TEXAS AMERICAN TITLE
COMPANY, Appellee.**

No. 14–03–01131–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 30, 2006.

Rehearing Overruled May 18, 2006.

Michael G. Tapp and H. Victor Thomas, Houston, for appellants.

Jim D. Brissee and Matt E. Rubin, Houston, for appellees.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## SUBSTITUTE OPINION
## ON REHEARING

RICHARD H. EDELMAN, Justice.

Appellee's second motion for rehearing is granted in part; our opinion on rehearing issued in this case on January 19, 2006 is withdrawn; and the following substitute opinion on rehearing is issued in its place.

In this mortgage loan closing dispute, Home Loan Corporation d/b/a Expanded Mortgage Credit ("Home Loan") appeals a summary judgment entered in favor of Texas American Title Company ("TATCO"), and the denial of Home Loan's motion for summary judgment, on the ground that the evidence shows that TATCO breached its fiduciary duties as escrow agent in the closing. We affirm in part, and reverse and remand in part.

## Background

TATCO acted as settlement agent for the closing of a residential mortgage loan (the "loan") funded by Home Loan. After Home Loan sold the loan in the secondary market, no payments were made on it, and Home Loan was obligated to repurchase it. Home Loan filed suit against TATCO (and others who are not parties to this appeal), alleging, as relevant to this appeal, that TATCO breached fiduciary duties it owed Home Loan by failing to: (1) inform Home Loan that the seller had requested over half of the seller's proceeds to be paid to the mortgage loan broker; (2) inform Home Loan that (after the preceding request was denied) the seller had requested that those proceeds be paid to the principal of the mortgage loan broker, Jeff Kruichak, and that TATCO would comply with this request; and (3) accurately disclose on the HUD–1 settlement statement (the "HUD–1") how the proceeds would be or had been disbursed. The parties filed cross-motions for summary judgment, disputing whether any such duties were owed or had been breached, and the trial court granted TATCO's motion and denied that of Home Loan.

Both parties' summary judgment materials and briefs on appeal have addressed the duties owed by TATCO as if it were an escrow agent in the loan transaction, even though no formal escrow agreement was entered into by the parties. However, as discussed below, because TATCO has not established that the duties of an escrow agent or any other type of closing or settlement agent are limited in the manner that it contends, our disposition is not affected by whatever legal distinctions may exist between such agents.

## Standard of Review

A traditional summary judgment may be granted if the motion and summary judgment evidence show that, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). A no-evidence motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See* TEX. R. CIV. P. 166a(i).[1]

In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference, and resolve any doubts, in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Where, as here, the parties file cross-motions for summary judgment, one of which was granted and the other denied, we review the summary judgment evidence presented by both sides, determine all questions presented, and affirm or reverse accordingly. *See id.*

## Fiduciary Duties

TATCO's motion for summary judgment asserted that its duties to Home Loan were limited to: (1) carrying out the terms of the real estate contract and escrow agreement; and (2) disclosing any actual knowledge of a scheme to defraud Home Loan (which is not alleged in this case). TATCO contends that it therefore had no duty to disclose the seller's funding re-

---

**1.** TATCO's motion was both a traditional and no-evidence motion. However, because the grounds were legal, rather than factual or evidentiary, the difference is not material to our disposition.

quests to Home Loan because: (1) TATCO was required to remain strictly impartial and not favor the interest of any party to a closing over that of another; (2) an escrow agent has no obligation to police the affairs of the participants or report suspicious circumstances unless it has actual knowledge of a scheme to defraud; and (3) the request that payment be sent to Texas State Mortgage Brokers, Inc. ("TSMB") and the actual disbursement of the escrow funds to Kruichak occurred after the loan was funded by Home Loan, and, thus, there is no evidence that TATCO's actions caused Home Loan any damage.

### Duty to Disclose Seller's Funding Requests

■ Even where, as in this case, no formal escrow agreement has been entered into, a title company that accepts funds for disbursement in a closing transaction for a fee owes the party remitting those funds a duty of loyalty, a duty to make full disclosure, and a duty to exercise a high degree of care to conserve the money and pay it only to those persons who are entitled to receive it. *See City of Forth Worth v. Pippen,* 439 S.W.2d 660, 664–65 (Tex. 1969).[2] Ordinarily, a fiduciary duty of full disclosure requires disclosure of all material facts known to the fiduciary that might affect the rights of the person to whom the duty is owed.[3] However, there is variation among the states regarding the extent to which any such disclosure duty applies to escrow agents.

Under the Restatement and in at least one state, an escrow holder's duties are limited to the safekeeping of the escrow property and its delivery or return to the appropriate party, as the case may be, in accordance with the agreement; and, thus, entail no duty of disclosure whatever unless specified by the agreement.[4] In at least two other states, an escrow agent has no duty to disclose unless it has actual knowledge of clear evidence of fraud.[5] A further variation followed in at least two other states is that, although not required to investigate, an escrow agent has a duty to disclose facts that a reasonable escrow agent would perceive as evidence of fraud.[6] Finally, at least two other jurisdictions prescribe that an escrow agent owes a duty to disclose all matters coming to the agent's notice or knowledge concerning the subject of the agency that are material for the principal to know for his protection or guidance.[7]

2.  In *Pippen,* as in this case, the title company was not a formal escrow agent:

> It should be noted that Rattikin [Title Company] did not receive or hold these funds as a true escrow, although that term has been used by the parties. There was no escrow agreement, and Rattikin owed no obligation to the seller with respect to funds which were held by Rattikin while consummation of the settlement and conveyance was being awaited. The City simply sent its funds to Rattikin to be used to acquire the land and to settle the claim of the selling landowners. If these funds were misapplied, it was the City and not the seller who was entitled to sue.

439 S.W.2d at 664.

3.  *See Huie v. DeShazo,* 922 S.W.2d 920, 923 (Tex.1996); COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, INSURANCE, EMPLOYMENT PJC 104.2(e) (2003) (Breach of Fiduciary Duty).

4.  *See* RESTATEMENT (SECOND) OF AGENCY § 14 D cmts. a-c (1958); *Gurley v. Bank of Huntsville,* 349 So.2d 43, 45 (Ala.1977).

5.  *See Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.,* 27 Cal.4th 705, 117 Cal. Rptr.2d 541, 41 P.3d 548, 552 (2002); *Am. State Bank v. Adkins,* 458 N.W.2d 807, 810–11 (S.D.1990).

6.  *See Mark Props., Inc. v. Nat'l Title Co.,* 117 Nev. 941, 34 P.3d 587, 590–91 (2001); *Burkons v. Ticor Title Ins. Co. of Cal.,* 168 Ariz. 345, 813 P.2d 710, 718–20 (1991).

■ In seeking to establish that Texas law limits its duty of disclosure to facts involving known fraud, TATCO first relies on *Pippen,* in which a settlement agent was found to have breached its fiduciary duties for failing to disclose a fraudulent misapplication of funds. *See* 439 S.W.2d at 664–65. However, because *Pippen* involved only a fraudulent misapplication of funds, it gives no express guidance concerning a duty of disclosure in any other context.

TATCO argues that *Pippen* must nevertheless be read as limiting the duty of disclosure because it also recognizes a duty of loyalty to each party in the escrow transaction, which, in turn, requires the escrow agent to remain neutral and thereby precludes it from disclosing to one party any information obtained from another if the disclosure could work to the detriment of the party from whom it was obtained. However, the duty of loyalty is mentioned in *Pippen* only once without any elaboration,[8] and the opinion contains no indication whatever of any duty of neutrality, loyalty, or otherwise to any party other than the one remitting the settlement funds and paying the settlement agent's fee,[9] much less that the agent's duty of disclosure was in any way affected by any such duties to others. Moreover, *Pippen's* use of the phrase, "duty of *full* disclosure"[10] (emphasis added), its citation in this context of *Kinzbach,* also applying the conventional fiduciary duty of full disclosure,[11] and *Pippen's* statements, "The governing principles of law ... cannot be said to be new. ... To the contrary, we are simply looking at traditional law as to fiduciaries"[12] are, if anything, at odds with TATCO's contention that *Pippen* actually envisioned a lesser duty of disclosure for settlement agents.

Apart from *Pippen,* TATCO relies on the following language from *Chapman Children's Trust* and *Equisource Realty* to

7. *See Aronoff v. Lenkin Co.,* 618 A.2d 669, 687 (D.C.1992); *Kitchen Krafters, Inc. v. Eastside Bank of Mont.,* 242 Mont. 155, 789 P.2d 567, 573 (1990), *overruled on other grounds by Busta v. Columbus Hosp. Corp.,* 276 Mont. 342, 916 P.2d 122, 134–40 (1996).

8. *See Pippen,* 439 S.W.2d at 665.

9. To whatever extent escrow agents owe fiduciary duties to other parties to the escrow agreement, *Pippen* addressed only the duties the agent owes to the party that deposited the funds in escrow and paid its fee:

> This contention overlooks the fiduciary obligation which Rattikin [the title company] owed to the City. Rattikin took the City's money to accomplish a purpose directed by the City. Rattikin was paid a fee for its services and for the careful handling of these funds. Rattikin therefore owed the City the duty of loyalty, the duty to make full disclosure, and the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it.

*Id.*

10. Cases adhering to a lesser duty of disclosure do not refer to it as a duty of "full" disclosure. *See supra,* notes 4–7. TATCO's position would interpret this duty of ostensibly *full* disclosure instead as essentially a duty of *non*-disclosure and thereby disregard the plain meaning of the language used by the Texas Supreme Court in *Pippen.*

11. *See Id.* (citing *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 513–14 (1942)).

> It is the duty of a fiduciary to deal openly, and to make full disclosure to the party with whom he stands in such relationship. ... Turner's position as a trusted employee of Kinzbach ... called on him to make full disclosure to his employer of all the facts and circumstances concerning his dealings with Corbett.

*Kinzbach,* 138 Tex. 565, 160 S.W.2d at 513–14.

12. 439 S.W.2d at 667.

show that Texas has adopted a limited duty of disclosure for escrow agents:

> The "escrow relationship is a stakeholder relationship that carries special duties," including those that are fiduciary in nature. Once appointed, the escrow agent's duties are strictly limited to those defined by the escrow agreement.

*Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 438 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (citations omitted).

> The escrow agent owes fiduciary duties to buyer and seller, but these duties are strictly limited to its role as escrow agent. The scope of the agency to both parties is defined by the escrow agreement.

*Equisource Realty Corp. v. Crown Life Ins. Co.*, 854 S.W.2d 691, 697 (Tex.App.-Dallas 1993, no writ) (citations omitted).

However, despite containing this language, neither of these opinions, nor any other Texas decision we have found, has directly addressed any limitation on the scope of an escrow or other settlement agent's fiduciary duty of disclosure. Nor would there be any rationale for limiting such an agent's fiduciary duties to only those set forth in a written contract because: (1) fiduciary duties arise as a matter of law,[13] not contract[14]; (2) they exist in special relationships in which a high degree of trust warrants that the fiduciary's conduct be measured by higher standards than ordinary contractual dealings between parties[15] and that those standards not be "whittled down by exceptions"[16]; and (4) contracts between fiduciaries and those to whom they owe a fiduciary duty carry a presumption of unfairness.[17]

■ Lastly, TATCO urges that subjecting escrow agents to the same duty of disclosure as other fiduciaries would allow participants in failed real estate transactions to shift their losses to title companies for not disclosing information concerning the merits of the underlying transaction (such as market factors affecting the value of property, terms at which financing could have been obtained, and the like) that could have alerted a party to abandon the transaction in time to avoid the loss. However, this contention fails to recognize that a fiduciary's duties do not extend beyond the scope of the fiduciary relationship.[18] To the extent an escrow agent is employed only to close a transaction in accordance with a contract that has already been entered into by the parties, it is not apparent how the agent's duty of disclosure could extend beyond matters affecting the parties' rights in the closing

---

13. *Meyer v. Cathey,* 167 S.W.3d 327, 330–31(Tex.2005).

14. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 203 (Tex.2002).

15. *See Kinzbach,* 138 Tex. 565, 160 S.W.2d at 514.

16. *Slay v. Burnett Trust,* 143 Tex. 621, 187 S.W.2d 377, 387–88 (Tex.1945). However, a fiduciary's duties may sometimes be expressly limited by contract. *See* TEX. PROP.CODE ANN. § 113.059 (Vernon 1995 & Pamphlet 2005); *Sterling Trust Co. v. Adderley,* 168 S.W.3d 835, 847 (Tex.2005).

17. *See, e.g., Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.,* 20 S.W.3d 692, 699 (Tex.2000).

18. *See Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 159–60 (Tex.2004) (holding that an attorney hired to review and draft sale documents for a tract of land had no fiduciary duty to inform the client of a city council decision pertaining to the tract because the scope of the attorney's representation did not include representation of the client before the city council).

process to those concerning the merits of the underlying transaction.

In summary, contrary to TATCO's position, no Texas court (and particularly not the Texas Supreme Court) has even directly addressed, let alone affirmatively adopted, a limitation on the fiduciary duty of disclosure applicable to an escrow agent. Although courts that have addressed this issue in other states have varied in their approach, none of those decisions is binding on this court; and, regardless which of their reasoning we might find persuasive, it is not within our province as an intermediate appellate court to select the law our State will follow. Accordingly, because TATCO's motion for summary judgment did not establish that its asserted limitation on an escrow agent's (or other settlement agent's) fiduciary duty of disclosure has been adopted under Texas law, we sustain Home Loan's challenge to that portion of the summary judgment.

■ Turning to Home Loan's motion for summary judgment on the fiduciary duty of disclosure, the evidence necessary to support that motion would, at a minimum, have to prove conclusively that a disclosure of the seller's request for payment to the mortgage broker was material to Home Loan's rights in the closing phase of the transaction. Although some of Home Loan's summary judgment evidence was probative of this fact question, it did not conclusively prove it. Therefore, we cannot properly render summary judgment in Home Loan's favor.

### Lack of Damage

■ Home Loan contends that, had TATCO advised it of the seller's requests to divert the loan proceeds to the mortgage broker or its principal, Home Loan could have withheld or withdrawn approval and/or funding of the loan and thereby avoided the loss it incurred on the loan's

default. TATCO's motion for summary judgment asserted that Home Loan suffered no loss from the disbursement because Home Loan had already funded the loan before TATCO received or complied with the request to disburse the proceeds to Kruichak.

Home Loan's closing instructions to TATCO required that: (1) a copy of the HUD–1 closing statement be faxed to Home Loan's office before closing for review, after which TATCO was to contact Home Loan for a funding number (signifying Home Loan's approval of funding in accordance with the HUD–1); and (2) no change be made to any document without Home Loan's approval. Pursuant to these instructions, on December 18, 2000, TATCO faxed Home Loan a preliminary HUD–1 before closing. Among other things, it reflected that TSMB was to be paid a $750 loan origination fee in the closing and a $5200 mortgage broker fee outside the closing. The statement further reflected that a net balance (after deducting closing costs) of $76,837.12 was due to the seller, New Horizon Community Trust, and included a standard printed certification, stating, "To the best of my knowledge, the HUD–1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction." This certification was signed by Dawn Phillips, the branch manager and settlement agent for TATCO. Based on the HUD–1 that TATCO faxed to Home Loan, Home Loan approved the funding of the loan. However, the record does not reflect whether this approval occurred on December 18 or 19.

A "Preliminary Disbursement Sheet" dated December 18 reflects that the entire amount of seller's proceeds would be paid to Marjorie Monson (who is not otherwise

identified). However, at some point before TATCO disbursed the seller's proceeds, the seller faxed TATCO a request to issue a check for $41,450.82 of those proceeds to TSMB.[19] After TATCO refused this request, the trustee faxed a second request to issue a check in that amount to Jeff Kruichak, the President of TSMB.[20] TATCO complied with this request, except that at Kruichak's request, TATCO wired the funds rather than issuing a check. TATCO did not advise Home Loan of the seller's requests or this payment (the "payment") before making it. An undated "Disbursement Sheet" indicates that the loan proceeds were received on December 19, the various closing costs were paid by check on December 19, $35,386.50 of the seller's proceeds were wired to the seller's bank on December 20, and the remaining $41,450.02 of the seller's proceeds were wired to Kruichak's bank on December 22.

In a formal escrow arrangement, the deposit of funds by Home Loan would have been irrevocable, pending satisfaction of the conditions for disbursement.[21] The parties' summary judgment materials did not address whether an escrow or other settlement agent's payment, at a seller's request, to a third party for the benefit of the seller is the legal equivalent of a payment to the seller, and thus a person entitled to receive payment, such that the payment would have complied with the conditions for disbursement. If such a payment did so comply, and if Home Loan's deposit of the loan funds, and their disbursement, was irrevocable, then Home Loan would have had no recourse to prevent the disbursement. Under those circumstances, it is not apparent how Home Loan's loss would have been caused by TATCO's disbursement of the funds according to the terms Home Loan had agreed to and could not alter after it deposited the funds. Moreover, because the underlying loan transaction was a sham, Home Loan would have suffered the resulting loss on it even if TATCO had disbursed the funds to the seller expressly named in the HUD–1.[22]

However, because the summary judgment materials do not establish any of the foregoing legal or factual considerations, summary judgment could not properly be granted with regard to TATCO's contention of lack of damage. Therefore, we sustain Home Loan's challenge to that aspect of the summary judgment.

Accordingly, we: (1) reverse the trial court's summary judgment on Home Loan's claim for breach of fiduciary duty; (2) remand that portion of the case to the trial court for further proceedings; and (3) affirm the summary judgment as to Home Loan's remaining claims.

---

**19.** This document has a date of "12/18/00" handwritten on it, but there is no evidence indicating what this date signifies.

**20.** This document bears a handwritten date of "12/21/00," but there is no evidence what that date signifies.

**21.** See, e.g., Gholson v. Thompson, 298 S.W. 318, 320 (Tex.Civ.App.-Eastland 1927, no writ); Blue v. Conner, 219 S.W. 533, 534 (Tex.Civ.App.-Amarillo 1920, no writ).

**22.** Because Home Loan's claim for breach of fiduciary duty sought only actual and punitive damages, and not fee forfeiture, a lack of causation is dispositive. See Burrow v. Arce, 997 S.W.2d 229, 240 (Tex.1999) (holding that proof of actual damages is not required to obtain fee forfeiture for breach of fiduciary duty).