

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00034-CV

_____


RICHARD SHOALMIRE AND PATRICIA SHOALMIRE, Appellants

V.

U.S. TITLE OF HARRISON COUNTY, TEXAS, Appellee


On Appeal from the 123rd Judicial District Court
Panola County, Texas
Trial Court No. 2006-355


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Before Richard and Patricia Shoalmire purchased a tract of Panola County land and what turned out to be a mobile home located on that land, the previous property owners, Thaddie Ray and Jimmie Lynn Pool Greer (the Greers), may have taken steps to have the mobile home recognized as part of the real property, rather than as personal property. Also before closing, the Shoalmires had visited the property twice, once with an inspector hired by them. After closing, they claim to have been damaged by (a) misrepresentations about the type of construction of the residence on the property or a failure to disclose that the residence was a mobile home and (b) the fact that, after closing, there remained a security interest against the mobile home.

The Shoalmires appeal a trial court's summary judgment granted in favor of escrow agent, U.S. Title Company of Harrison County (UST). We affirm the trial court's judgment because summary judgment was proper on the Shoalmires' claims against UST (1) under the Texas Deceptive Trade Practices Act (DTPA), (2) for common law and statutory fraud, (3) for negligence, and (4) for breach of a duty of good faith and fair dealing.

The Shoalmires were searching for a home to buy and came across a listing posted by agent Edith Certain on the website of Century 21 Fugler and Fugler, Inc. The listing advertised "thirteen and a half acres in Deberry, Texas with a modular home, shop and pond" that was then owned by the Greers.[1] On May 13, 2005, the Shoalmires visited the property. They also visited the property

---

[1] In a document called "Information About On-Site Sewer Facility," the Greers listed the home as a single-family dwelling and did not mark on the form that the home was a mobile home,

2

a second time with their inspector, Aven W. Hook, who provided the Shoalmires with a property inspection report that stated "[t]he house is a pre-manufactured home." The Shoalmires admit knowing before closing that the home was "pre-manufactured," but they claim they did not know what the term meant and did not ask anyone.

They made an offer matching the $150,000.00 asking price and applied for financing pre-qualification through Allied Home Mortgage Capital Corporation. The Greers accepted the offer and informed the Shoalmires that, because the Greers' loan with BancorpSouth Bank was expiring shortly, they would accept $2,000.00 less if closing occurred immediately. The Greers also assured the Shoalmires that the bank would be willing to provide them with interim financing to facilitate the quick closing. The Shoalmires agreed and qualified to close a six-month interim loan for $148,000.00, pending long-term financing. After an appraisal valued the property at only $147,000.00, the Shoalmires were instructed to pay the bank $1,000.00 to cover the difference between the appraisal price and the loan.

The sale and interim loan were closed May 25, 2005. At the closing, the Greers gave the Shoalmires a warranty deed and promised to produce a bill of sale for the mobile home.[2] On the same date, the Shoalmires executed a Waiver of Inspection, which specifically stated:

---

although the option was provided.

[2]The Home Protection Plan documentation by Century 21 listed the home as a single-family home as of the date of closing.

Since [UST] examines only the record title and does not actually see the property, we hereby waive inspection by [UST] of this property and accept our policy subject to the rights of parties in possession. We agree that it is our responsibility to inspect said premises . . . . We acknowledge we are not relying upon any representation, statement or other assertion about the property condition or parties in possession, but are relying upon our inspection of the property. We take the property under the express understanding that the title insurance agent and title insurance company have made no express or implied warranties.[3]

During efforts to obtain long-term financing, and after closing, Allied notified the Shoalmires that their appraisal listed the home value at only $144,000.00, that the residence was really a doublewide mobile home, and that closing on the long-term loan could not occur since they were unable to locate title to the mobile home. When the Shoalmires contacted Certain and Century 21, they were told that nothing could be done since the closing had occurred over forty-five days earlier. No title or permit for the mobile home was located.

On April 12, 2006, the Shoalmires sent their notice of DTPA claims to UST. About three months later, they executed a renewal and modification agreement with BancorpSouth rearranging the time and manner of payment of their deed of trust and note. The renewal contained a provision whereby the Shoalmires:

---

[3]An Advisory Notice Agreement purporting to contain the Shoalmires' initials states that Century 21 has "not offered to perform any other services" other than marketing the real estate, that they are "not qualified to render an opinion regarding the structural condition or functionality of buildings or other improvements to the property," that the Shoalmires "understand we should not to [sic] rely on comments or representations made by any Licenced Broker or Salesman associated with Century 21" related to these matters. They also signed the Final Inspection and Acceptance of Property Condition stating "[w]e have personally performed a final inspection of property condition on 5/25/05 and find it to be in acceptable condition."

RELEASE[D], RELINQUISHE[D], and forever DISCHARGE[D] [BancorpSouth], as well as its . . . agents . . .of and from any and all claims, demands, actions and causes of action of any and every kind or character . . . arising out of or with respect to any and all transaction relating to the Note and Security Instruments occurring prior to [July 24, 2006].

The Shoalmires subsequently sued UST, Allied, Century 21, Certain, BancorpSouth, and the Greers, and alleged the various defendants committed fraudulent inducement, wrongful concealment, statutory fraud under Section 27.01 of the Texas Business and Commerce Code, breach of fiduciary duties, negligence and gross negligence, breach of duty of good faith and fair dealing, and DTPA violations.[4]

UST filed traditional and no-evidence summary judgment motions arguing that the Shoalmires were not consumers as defined by the DTPA, that they had waived any claims against UST, that UST had not made any representation that the mobile home was a modular home, that they had not breached any duty, and that there was no evidence of causation or damages. Diana Renee Jarrell also clarified that the title insurance policy was purchased from Stewart Title through Panola County Abstract, who also conducted the title examination, and reiterated the fact that UST was merely an escrow agent in the transaction.

The Shoalmires' response stated UST should have known the home was a mobile home because, on or about March 25, 2005, the Greers mortgaged it to BancorpSouth, the closing was done at UST, and UST's employee was the notary involved in the transaction. They claimed UST's

---

[4]Claims of breach of fiduciary duty were later withdrawn by the Shoalmires.

employee understood it was her responsibility to pass on marketable title. It also clarified that the actual title policy was not effective until November 17, 2005, but argued UST did not pass title to the property at closing. Additionally, they argued that waivers of DTPA claims were void against public policy.

The trial court granted UST's motion for summary judgment.

We employ a de novo review of the trial court's grant of a summary judgment, which is based on written pleadings and written evidence, rather than live testimony. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Lamar v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see* TEX. R. CIV. P. 166a(c). Summary judgment is proper when a movant establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *French v. Gill*, 252 S.W.3d 748, 751 (Tex. App.—Texarkana 2008, pet. denied); *Powers v. Adams*, 2 S.W.3d 496, 497 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). During our analysis of the traditional motion, and in deciding whether there is a disputed material fact issue which precludes summary judgment, proof favorable to the nonmovant will be taken as true, and every reasonable inference will be indulged in their favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Nixon*, 690 S.W.2d at 548–49.

When both sides move for summary judgment, the court is to review both sides' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

The trial court's summary judgment specified no particular ground as supporting the summary judgment. When, as is the case here, the trial court does not set out the grounds on which it ruled, we affirm the summary judgment if any ground urged in the motion for summary judgment is meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Mayes v. Goodyear Tire & Rubber Co.*, 144 S.W.3d 50, 55 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

*(1)     Summary Judgment Was Proper on the Shoalmires' Claims Against UST Under the DTPA*

The Shoalmires argue on appeal that summary judgment was improper on their DTPA causes of action. We disagree.

One who seeks or acquires escrow services qualifies as a consumer under the DTPA. *Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532, 536 (Tex. App.—Corpus Christi 1989, writ denied). The Shoalmires alleged that UST (1) represented "that goods or services had sponsorship, approval, characteristics, benefits or qualities that they did not have"; (2) represented "that goods or services were of a particular standard, quality or grade or were of a particular style or model when they were in fact, of another"; (3) failed "to disclose information about goods or services that was known at the time of the transaction, when the failure was intended to induce the Plaintiffs into the transaction"; and (4) acted unconscionably. TEX. BUS. & COM. CODE ANN.

7

§ 17.46(b) (Vernon Supp. 2009).

There is no evidence that UST made any representation as to the nature of the residence or whether it had a lien against it. UST made no representations about the condition of the residence, as acknowledged by the Shoalmires' waiver of inspection. With respect to the nondisclosure of the nature of the home, Jarrell testified that she was simply a notary in the previous transaction involving the Greers' mobile home, did not read the documentation because she was not the closing agent on that transaction, and did not know the home was a mobile home until after closing had occurred on this transaction. *See Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex. 1994) (title insurer held liable only for affirmative representations; issuance of title policy not actionable representation under DTPA). Chapter 121 of the Texas Civil Practice and Remedies Code describes the duties of a notary public and does not suggest Jarrell was charged with knowledge of the contents of closing documents. TEX. CIV. PRAC. & REM. CODE ANN. §§ 121.001–.015 (Vernon 2005). The Shoalmires failed to submit any evidence contradicting Jarrell's testimony, and also failed to bring forth evidence suggesting UST or Jarrell acted unconscionably. Thus, the trial court properly granted summary judgment against the Shoalmires' DTPA claims.[5]

Because we have determined that the Shoalmires failed to bring forth any evidence to support their allegations involving a misrepresentation or omission of a known fact and failed to contradict UST's evidence suggesting the Shoalmires did not rely on any alleged misrepresentation or

---

[5]The Shoalmires cite no cases supporting the proposition that these facts raised issues of unconscionability by UST.

8

omission, we need not discuss whether the Shoalmires also failed to provide any evidence regarding producing cause and damages.

*(2)    Summary Judgment Was Proper on the Shoalmires' Claims Against UST for Common Law and Statutory Fraud*

The Shoalmires also argue that the summary judgment improperly denied their fraud claims. In general, fraud consists of: (1) a material representation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) made with the intent that it be acted upon by the other party, (5) was acted upon by the party in reliance on the representation, and (6) caused injury to the party. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994). In this case, the Shoalmires complain that UST either had actual knowledge, or should have known, through a competent title search, that the residence on the property was a mobile home. First, this allegation fails to address any material misrepresentation on the part of UST, especially since UST did not conduct the title search.[6] Additionally, a thorough

---

[6]The Shoalmires also argue that UST's website

> indicates that [UST] would help pass marketable title because "[i]n today's complicated world, property owners need title protection more than ever. A deed to a piece of property does not necessarily prove that the seller is the owner of the property and errors in clerical work could endanger a person's legal title to his land."

There is no evidence in the record suggesting the Shoalmires ever viewed the website before closing, if at all. Thus, there is no evidence they relied on the website. Also, the website quote does not alter UST's duty as a simple escrow agent.

9

review of the record produces no evidence that the Shoalmires relied on any representation made by UST at or before closing.

Further, independent inspections by the purchaser establish as a matter of law that the purchaser did not rely on another party's misrepresentation or failure to disclose. *See Dubow v. Dragon*, 746 S.W.2d 857, 860–61 (Tex. App.—Dallas 1988, no writ). In *Dubow*, the buyers visited a home on two occasions and hired professionals to inspect the home. *Id.* at 858. Although the inspection reports found existing and potential problems throughout the home, the Dubows nevertheless negotiated a lower price and signed a contract with an "as is" clause. *Id.* at 858–59. The court of appeals upheld the summary judgment against the Dubows, concluding that their inspection superseded the seller's wrongful conduct. *Id.* at 860–61. The *Dubow* opinion can be similarly applied in this case.

The Shoalmires next argue that Jarrell was a notary at closing of a loan given to the Greers with the mobile home as collateral, and should have known the home was a mobile home since it was listed as personal property. This allegation amounts to a failure to disclose a material fact. Silence is equivalent to a false representation where circumstances impose a duty to speak and one deliberately remains silent. *Lesikar v. Rappeport*, 33 S.W.3d 282, 319 (Tex. App.—Texarkana 2000, pet. denied) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)). Whether such a duty exists is a question of law. *Id.* A duty to disclose may arise in four situations: (1) where there is a special or fiduciary relationship, (2) where one voluntarily discloses partial information,

10

but fails to disclose the whole truth, (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue, and (4) where one makes a partial disclosure and conveys a false impression. *Id.*; *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, writ denied). Fiduciary duties arise as a matter of law in certain formal relationships. *Zinda v. McCann Street, Ltd.*, 178 S.W.3d 883 (Tex. App.—Texarkana 2005, pet. denied); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

Generally speaking, an "escrow agent owes a fiduciary duty" to both parties to an escrow contract. *Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 203 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Trahan v. Lone State Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 286 (Tex. App.—El Paso 2007, pet. denied). "However, an escrow agent's duties are strictly limited and the scope of the agent's duties are defined by the escrow agreement." *Trahan*, 247 S.W.3d at 287. Our record does not contain the escrow agreement. Nevertheless, an "escrow agreement is a contract formed for the purpose of preserving funds so they will be available for disbursement when payment is authorized." *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet. ). "Among the obligations of the fiduciary are (1) the duty of the loyalty, (2) the duty to make a full disclosure, and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it." *Zimmerman v. First Am. Title Ins. Co.*, 790 S.W.2d 690, 695 (Tex. App.—Tyler 1990, writ denied). To the extent UST was employed only to close a transaction in accordance with a contract already entered into by the parties, "it is not apparent how

11

the agent's duty of disclosure could extend beyond matters affecting the parties' rights in the closing process to those concerning the merits of the underlying transaction" concerning title. *Home Loan Corp. v. Tex. Am. Title Co.*, 191 S.W.3d 728, 733–34 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). An escrow agent has no "independent duty to determine the correctness of [documentation] provided by a title company." *Holder-McDonald v. Chicago Title Ins. Co.*, 188 S.W.3d 244, 248 (Tex. App.—Dallas 2006, pet. denied) (attachment of incorrect legal description of property not actionable against title company escrow agent absent knowledge of defect); *Chicago Title Ins. Co. v. Alford*, 3 S.W.3d 164, 167–68 (Tex. App.—Eastland 1999, pet. denied).

Thus, the trial court properly granted summary judgment on the Shoalmires' fraud claims, because the Shoalmires produced no evidence of misrepresentation and because UST, as an escrow agent, had no duty that any summary-judgment evidence suggested was violated. We also conclude that UST did not have a duty other than the duties assigned to it as an escrow agent, such that the Shoalmires' claims for fraud in the inducement and fraud in real estate transaction claims under Section 27.01 of the Texas Business and Commerce Code were also properly disposed of by summary judgment.[7] TEX. BUS. & COM. CODE ANN. § 27.01 (Vernon 2009).

---

[7]UST also argues that the Shoalmires' renewing their interim loan with BancorpSouth waived any claims, both by virtue of the act of renewal itself and by virtue of release language in the renewal paperwork. In *B & R Development, Inc. v. Rogers*, we acknowledged that a party's fraud cause of action is barred or waived as a matter of law if, after they discover a deficiency and have full knowledge of it, they renegotiate the transaction and execute renewal notes. 561 S.W.2d 639, 641 (Tex. App.—Texarkana 1978, writ ref'd n.r.e.). Specifically, we stated where "one with knowledge of a fraud perpetrated on him in a prior transaction executed a renewal of his obligation, he thereby ratifies the original transaction and will not be permitted to plead fraud." *Id.* at 642. This rule

*(3)     Summary Judgment Was Proper on the Shoalmires' Claims Against UST for Negligence*

The Shoalmires argue that UST breached the "duty to use ordinary care in making representations of fact." Again, there is no evidence of a misrepresentation by UST. Also, because UST's duties of reasonable care extended only to its status as escrow agent, and there is neither a claim nor evidence of any breach of duty as to those limited responsibilities, the Shoalmires' negligence claim was properly disposed of by summary judgment.

---

applies to "actions for damages or to recover consideration paid for property purchased as a result of fraudulent misrepresentation." *Id.* The reasoning behind the rule is that fraud has been eliminated from the transaction where it has been renegotiated after discovery. *Id.* at 643. We would distinguish *Rogers* from the instant case because the claims here being considered are not those leveled at BancorpSouth, but at UST. We question whether renewal of a loan would release any obligations of other parties to the earlier transaction.

The loan renewal contained a provision whereby the Shoalmires released BancorpSouth and its agents "from any and all claims, demands, actions and causes of action of any and every kind or character . . . arising out of or with respect to any and all transaction relating to the Note and Security Instruments occurring prior to [July 24, 2006]." UST argues that it is undisputed that it acted as BancorpSouth's agent during closing. Releases are subject to the rules of construction governing contracts in general, and we will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained. *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996); *Stafford v. Allstate Life Ins. Co.*, 175 S.W.3d 537, 542 (Tex. App.—Texarkana 2005, no pet.). We are to carry out the true intentions of the parties as expressed in the written instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). We give the contract its plain grammatical meaning, unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). Because of our other rulings in this case, we are not required to decide whether this release language released UST. However, we question whether the release language was broad enough to cover previous acts of parties to this transaction other than the bank and its employees and agents involved specifically in the financing.

13

*(4)      Summary Judgment Was Proper on the Shoalmires' Claims Against UST for Breach of a Duty of Good Faith and Fair Dealing*

The claim that UST breached a duty of good faith and fair dealing with the Shoalmires, in wrongfully denying payment under the title policy, was not supported by any evidence.  Evidence demonstrated that UST did not issue the title policy or have any obligation to pay under it.

We affirm the trial court's summary judgment against the Shoalmires.


_____  Josh R. Morriss, III
                                           Chief Justice


Date Submitted:      November 23, 2009
Date Decided:        January 26, 2010