

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00375-CV

**CONSTRUCTION FINANCIAL SERVICES, INC.**,
Appellant

v.

**CHICAGO TITLE INSURANCE COMPANY**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-11173
Honorable David Peeples, Judge Presiding[1]

Opinion by: Marialyn Barnard, Justice

Sitting: Catherine Stone, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: May 1, 2013

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

This is an appeal from a summary judgment in favor of appellee Chicago Title Insurance

Company ("Chicago Title") on appellant Construction Financial Services, Inc.'s ("Construction

Financial") claims for breach of fiduciary duty, violations of the Texas Deceptive Trade

Practices Act ("DTPA"), negligence, and breach of contract. On appeal, Construction Financial

---

[1] The Honorable David Peeples presided over this case as a "special judge." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 151.001-.013 (West 2011). After Judge Peeples signed the summary judgment order, it was "approved, adopted, and signed" by the Honorable John D. Gabriel, presiding judge of the 131st Judicial District Court, Bexar County, Texas.

raises six issues challenging the summary judgment. We affirm in part and reverse and remand in part.

## BACKGROUND

In February 2007, Construction Financial, a lending company, loaned $2,250,000.00 to Wren Alexander Investments, LLC. ("Wren"). The loan was to allow Wren to purchase a 551-acre ranch in Medina County, Texas. This transaction was closed at Texas Heritage Title Company, which later recorded the Deed of Trust in Medina County, Texas. Approximately a month later, Wren decided to borrow another $650,000.00 from Construction Financial. Construction Financial agreed to loan the additional funds to Wren. Charles Michael Scott, president of Construction Financial, averred that as additional collateral, a ranch tenant, Charles Pircher, agreed to pledge a quarter horse worth several hundred thousand dollars. As was its practice, Construction Financial wanted to close this transaction at a title company. Scott testified that Construction Financial almost always closes loan transactions at title companies, even when it does not purchase title insurance, because a title company takes responsibility for filing the loan papers with the proper authorities.

According to Scott, Wren Alexander, the owner of Wren, recommended the parties use Chicago Title for the closing. Both companies had used Chicago Title for previous closings, and both Scott and Alexander believed Chicago Title to be a professional and competent title company. Importantly, both Scott and Alexander were personally familiar with one of Chicago Title's escrow officers, Mary Furgason. Alexander told Scott he was "close personal friends" with Furgason, and Scott admitted he knew her as well, having dated her at one time.

Scott said Alexander called and told him Chicago Title and Furgason had agreed to handle the closing on the $650,000.00 loan. In anticipation thereof, Construction Financial forwarded closing instructions to Chicago Title and its attorneys forwarded the loan documents.

Alexander stated in his deposition they did not have an "appointment" with Furgason for the closing. But, Scott testified in his affidavit that Alexander told him Furgason would be available for the closing at Chicago Title on April 4, 2007. In his deposition, Scott admitted he could not recall if the date and time were coordinated through Furgason.

On April 4, 2007, Scott, Alexander, and Pircher went to the offices of Chicago Title. The parties met in Furgason's office. After the documents were signed, they were notarized by Furgason. According to Scott, Furgason "specifically agreed that Chicago Title would file the Deed of Trust in the real property records." Alexander stated that after the documents were signed and notarized, he heard Furgason ask Scott if he would like her "to file those papers for you." Furgason, in her deposition, testified she had no recollection of the closing or the events surrounding it; she participates in twenty to sixty closings each month. When she was first alerted some years later that there was a problem, she called Alexander, with whom she has a close, personal relationship, and asked him to refresh her memory. Based on her conversation with Alexander, Furgason stated during her deposition that there was no "agreement" for Chicago Title to close the loan transaction. Rather, as a courtesy to Alexander, Furgason said she would notarize the loan documents and file them. She specifically denied entering into any agreements "with these guys." Furgason testified neither she nor Chicago Title received any fee for the services. Scott stated in his affidavit he was unaware there was no fee paid or that Furgason was doing the work as a courtesy to Alexander, who as the borrower would have typically paid any closing costs. Scott claimed if he had known, he would have insisted that fees and costs be paid.

According to Scott, in the summer of 2008, Wren fell behind on its monthly loan payments. When Wren was unable to bring its loan payments up to date, Scott sought to foreclose and sell the ranch. It was during this process that Construction Financial's attorneys

learned that although the deed of trust for the original $2,250.000.00 loan was properly filed in the property records of Medina County, the deed of trust for the subsequent $650,000.00 loan was mistakenly filed in the Bexar County property records. Accordingly, the lien on the ranch and the quarter horse for the $650,000.00 was not perfected. Scott informed Furgason of the problem and asked her to file the deed of trust in Medina County. Furgason told him she did not have a copy of the deed of trust as Chicago Title had no file on the loan transaction. Scott testified he delivered his copy of the deed of trust to Chicago Title which then filed it in the Medina County property records on August 15, 2008. Scott testified he did not know about the filing problem when he originally received his copy of the deed of trust because the document did not state where it had been filed. However, near the top of the document, in capital letters, the deed of trust stated "THE STATE OF TEXAS COUNTY OF MEDINA" and within the property description on the first page of the deed of trust, it stated in capital letters the property is "SITUATED IN MEDINA COUNTY, TEXAS." Scott stated it never occurred to him the document would be filed anywhere but Medina County.

Furgason, individually and as a representative for Chicago Title, testified the deed of trust should have been sent to a title company in Medina County for filing pursuant to Chicago Title's normal procedures. It was mistakenly placed in a bin for documents to be filed in Bexar County, where it was ultimately filed. There is no dispute the document was misfiled.

As a result of the misfiling, Construction Financial found itself behind two other lienholders with regard to the $650,000.00 loan. Between the closing and the time Construction Financial was able to perfect its lien, Wren borrowed an additional $900,000.00, secured by the same property. Moreover, the Internal Revenue Service filed a multi-million dollar tax lien on the property in April 2008. These liens were perfected and superior to the lien held by Construction Financial. Facing foreclosure, Wren filed for bankruptcy. When the ranch was

sold pursuant to a Bankruptcy Court order, Construction Financial was paid in full on the original $2,250,000.00 loan, but received nothing with regard to the $650,000.00 loan. Rather, the lienholders who loaned Wren $900,000.00 were paid in full, and the remaining proceeds from the sale of the ranch, $1,192,612.46, were paid to the IRS.

On July 6, 2010, Construction Financial filed its original petition against Chicago Title. In its subsequent live petition, Construction Financial alleged claims for: violations of section 17.46 of the DTPA, breach of fiduciary duty, breach of contract, and negligence. As an affirmative defense to Chicago Title's claim of limitations, Construction Financial pled the discovery rule.

Construction Financial and Chicago Title filed competing motions for summary judgment with regard to the breach of fiduciary duty cause of action, and Chicago Title filed traditional and no evidence motions for summary judgment with regard to the other causes of action. The trial court ultimately rendered judgment that Construction Financial take nothing on its claims, setting forth the bases for its decision in the order. Specifically, the trial court:

 • denied Construction Financial's motion for summary judgment and granted the one filed by Chicago Title with regard to the breach of fiduciary duty claim, stating there was no fiduciary relationship between either Chicago Title and Construction Financial or Furgason and Construction Financial because Furgason's gratuitous favor in notarizing and filing the documents did not create such a relationship;

 • granted Chicago Title's traditional motion for summary judgment on the basis of limitations as to the negligence[2] and DTPA claims, specifically stating the discovery rule did not toll the statute of limitations, and further granted summary judgment in favor of Chicago Title on the DTPA claim, stating Construction Financial was not a consumer; and

 • granted Chicago Title's motion for summary judgment as to the breach of contract claim, stating there was no evidence of a written or oral contract, and no consideration from Construction Financial to Chicago Title.

---

[2] The trial court specifically denied Chicago Title's motion for summary judgment with regard to the negligence claim on all bases other than limitations.

Construction Financial filed a motion for new trial, which was overruled by operation of law. It thereafter perfected this appeal.

## ANALYSIS

In six issues, Construction Financial challenges the trial court's summary judgment order, contending:

- there are disputed issues of fact as to whether the parties were in a fiduciary relationship;

- with regard to the breach of fiduciary duty claim, Construction Financial proved as a matter of law that Chicago Title had a fiduciary duty to file the deed of trust in the proper county;

- Chicago Title did not prove as a matter of law that Construction Financial's negligence claim was barred by limitations;

- there are disputed issues of fact as to whether Construction Financial was a consumer within the meaning of the DPTA;

- Chicago Title did not prove as a matter of law that Construction Financial's DTPA claim was barred by limitations; and

- Chicago Title's decision not to charge a fee with regard to the closing does not, as a matter of law, prevent the formation of an enforceable contract.

We will address each issue by cause of action.

### *Standard of Review*

We review traditional and no evidence summary judgments de novo. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A traditional summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure is properly granted only when the movant establishes there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). To determine if the nonmovant raises a fact issue, we review the evidence in the light most favorable to the

nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010).

When both parties file traditional motions for summary judgment, and the trial court grants one motion and denies the other—as the trial court did in this case with regard to the breach of fiduciary duty claim—we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Hausser v. Cuellar*, 345 S.W.3d 462, 466 (Tex. App.—San Antonio 2011, pet. denied). However, if neither party has met its summary judgment burden, we may reverse and remand rather than rendering judgment. *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 165 (Tex. App.—Dallas 2008, no pet.); *Calhoun v. Killian*, 888 S.W.2d 51, 54 (Tex. App.—Tyler 1994, writ denied).

A no evidence motion for summary judgment under Rule 166a(i) under the Texas Rules of Civil Procedure is essentially a motion for a pretrial directed verdict. *See* TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i); *All Am. Tel., Inc. v. USLD Commc'ns*, 291 S.W.3d 518, 526 (Tex. App.—Fort Worth 2009, pet. denied). The motion must specifically state the elements for which there is no evidence. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc.*, 286 S.W.3d at 310; *All Am. Tel., Inc.*, 291 S.W.3d at 526. The trial court is

required to grant the motion unless the nonmovant produces more than a scintilla of summary judgment evidence that raises a genuine issue of material fact. TEX. R. CIV. P. 166a(i). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

In addition to other grounds, Chicago Title moved for summary judgment with regard to Construction Financial's claims for negligence and violations of the DTPA based on the affirmative defense of limitations. *See* TEX. R. CIV. P. 94; *Pressure Sys. Int'l, Inc. v. Sw. Research Inst.*, 350 S.W.3d 212, 215–16 (Tex. App.—San Antonio 2011, pet. denied) (recognizing limitations as affirmative defense). When a defendant moves for summary judgment based on an affirmative defense, the defendant must conclusively prove all elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). To accomplish this, the defendant must present summary judgment evidence that establishes each element of his defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996); *Booker v. Real Homes, Inc.*, 103 S.W.3d 487, 491 (Tex. App.—San Antonio 2003, pet. denied). Thus, as to the defense of limitations, Chicago Title bore the burden to establish the defense as a matter of law.

### Breach of Fiduciary Duty

Construction Financial alleged Chicago Title breached the fiduciary duty it owed to Construction Financial by failing to properly file the deed of trust in Medina County. The parties filed competing motions for summary judgment on this issue—Construction Financial filed a traditional motion for summary judgment; Chicago Title filed no evidence and traditional motions for summary judgment. The trial court denied Construction Financial's motion for summary judgment and granted the motion for summary judgment filed by Chicago Title, though

it is unclear whether the trial court granted the no evidence or traditional motion.  The trial court specifically found that as a matter of law neither Chicago Title nor Furgason was a fiduciary to Construction Financial.  In making its finding, the trial court noted that Furgason's "gratuitous favor in notarizing and filing a document created no fiduciary duty to Plaintiff, CFS."

"'[N]ot every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'"  *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997)).  If the underlying facts are undisputed, the existence or non–existence of a fiduciary relationship is a question of law for the court.  *Meyer*, 167 S.W.3d at 330.  A fiduciary relationship may be formal or informal.  *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).  Courts have determined that in certain formal relationships, e.g., attorney–client, trustor–trustee, a fiduciary duty arises as a matter of law.  *Meyer*, 167 S.W.3d at 330–31.  An informal fiduciary relationship may arise from "a moral, social, domestic or purely personal relationship of trust and confidence."  *Id.* at 331 (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)).  However, in the context of a business transaction, to impose an informal fiduciary duty, the special relationship of trust and confidence must exist prior to, and apart from, any agreement made the basis of the suit.  *Id.*  Courts do not create such relationships lightly.  *Meyer*, 167 S.W.3d at 331; *Schlumberger Tech. Corp.*, 959 S.W.2d at 177.

Construction Financial first contends there was a formal fiduciary relationship between Construction Financial and Chicago Title because Furgason acted as an escrow agent for the "closing" of the $650,000.00 loan transaction.  *See Holder–McDonald v. Chicago Title Ins. Co.*, 188 S.W.3d 244, 247 (Tex. App.—Dallas 2006, pet. denied) (holding any fiduciary duty owed by Chicago Title arose solely out of its employee's role as escrow agent and closer for purchase of property); *Chicago Title Ins. Co. v. Alford*, 3 S.W.3d 164, 167 n.2 (Tex. App.—Eastland 1999,

pet. denied) (recognizing escrow agent is in fiduciary relationship with contracting parties); *Zimmerman v. First Am. Title Ins. Co.*, 790 S.W.2d 690, 695 (Tex. App.—Tyler 1990, writ denied) (same). Chicago Title counters the transaction was not a closing, and neither Furgason nor Chicago Title acted as an escrow agent in this case.

First, the definition of "escrow officer" relied upon by Construction Financial for this argument is contained within the portion of the Texas Insurance Code applicable to title insurance. It is undisputed that with regard to the $650,000.00 loan, no title insurance was sought as it had been obtained in the prior $2,250,000.00 transaction that occurred shortly before—Construction Financial believed there was no need for it. Accordingly, the statutory definitions relied upon by Construction Financial in its argument have no applicability here. However, even if we were to assume the statutory definitions apply in this context, they do not support Construction Financial's contention.

The Texas Insurance Code defines an "escrow officer" as one who "clos[es] the transaction" as that is described in section 2501.006 of the Insurance Code.[3] TEX. INS. CODE ANN. § 2501.003(4)(d) (West 2009). Section 2501.006 states that "closing the transaction" describes the investigation that is made: (1) on behalf of a title insurance company, title insurance agent, or direct operation before a title insurance policy is issued; and (2) to determine proper execution, acknowledgment, and delivery of all conveyances, mortgage papers, and other necessary title instruments. *Id.* § 2501.006(a). Important in the context of this case, "closing the transaction" also includes a determination that: (1) all delinquent taxes have been paid; (2) if applicable, all current taxes have been properly prorated between buyer and seller; (3)

---

[3] Section 2501.003 also describes an escrow officer as one who countersigns title insurance forms, supervises the preparation and delivery of title insurance forms, and signs escrow checks. TEX. INS. CODE ANN. § 2501.003(4)(a)–(c). However, no party suggests Furgason or anyone else at Chicago Title undertook any of these actions.

consideration has been passed; (4) all proceeds have been disbursed; (5) a final title search has been made; and (6) all necessary papers have been filed for record. *Id.* § 2501.006(b).

Construction Financial focuses on the statute's reference to the escrow agent filing the papers of record, and based on this contends Furgason, who agreed to file the deed of trust, was an escrow agent as a matter of law. However, the determinations an escrow agent is required to make to "close" a transaction are stated in the conjunctive—the statute uses the word "and"—not in the disjunctive. Thus, to qualify as an escrow agent under the statute, the person must make all the listed determinations—not just one or two. Construction Financial disagrees, arguing that because no title insurance was necessary, the other duties were of no moment. However, even in the absence of title insurance, if Furgason had indeed been acting as a statutory escrow agent, she would have at a minimum ensured the consideration had passed and the proceeds were disbursed. It is undisputed that Furgason did not undertake to make such determinations. Accordingly, we hold there was no formal fiduciary relationship between Construction Financial and Chicago Title based on Furgason acting as a statutory escrow officer.

Moreover, an escrow agent must be appointed through a specific legal document that imparts a specific legal obligation. *Blume*, 196 S.W.3d at 448 (citing *Bell v. Safeco Title Ins. Co.*, 830 S.W.2d 157, 160 (Tex. App.—Dallas 1992, writ denied)). Although closing documents were forwarded from Construction Financial to Furgason, those documents do not appoint her as the escrow agent, though they do include certain instructions. However, there is nothing in the record to show Furgason undertook to complete any of those instructions. In fact, it appears from the summary judgment record that Furgason did nothing more than notarize the papers signed by Scott, Wren, and Pircher, and agree to file the deed of trust and a security agreement.

Because there was no formal fiduciary relationship based on Furgason acting as an escrow agent under the statute, we must determine if an informal fiduciary relationship was

created. Because Chicago Title moved for summary judgment under Rule 166a(i), Construction Financial was required, in the first instance, to provide more than a scintilla of evidence of a fiduciary relationship.

As set forth above, in the context of a business transaction such as the one in this case, the special relationship of trust and confidence must exist prior to, and apart from, any agreement made the basis of the suit. *Meyer*, 167 S.W.3d at 331. Courts do not create fiduciary relationships in this context without due consideration, and not every relationship, even those involving high degrees of trust and confidence, rises to the level of a fiduciary relationship. *Meyer*, 167 S.W.3d at 330; *Schlumberger Tech. Corp.*, 959 S.W.2d at 176–77. Mere subjective trust does not, as a matter of law, transform an arm's–length transaction into a fiduciary relationship. *Schlumberger Tech. Corp.*, 959 S.W.2d at 177.

In this case, there is evidence Scott and Alexander had a prior, personal relationship with Furgason. In fact, at some point, Scott and Furgason had dated, and Alexander and Furgason were "close personal friends." Furgason admitted seeing Alexander on a social basis and considered him a friend. Despite having dated Scott in the past, Furgason testified she had not seen him in "years." Both Construction Financial and Wren had used Chicago Title for numerous closings in the past. Alexander testified Wren had used Chicago Title as many as three hundred times for transactions in the past. Scott testified he usually allowed the borrower to select the title company, and Chicago Title had been used "from time to time." This is the extent of the evidence of a prior relationship between Construction Financial and Chicago Title. We hold this evidence does not constitute more than a scintilla of evidence of a prior special relationship of trust and confidence. The supreme court's decision in *Meyer* supports our holding.

In *Meyer*, a business manager, Cathey, sued a real estate developer, Meyer, alleging claims for fraud and breach of fiduciary duty. *Meyer*, 167 S.W.3d at 329. Cathey claimed Meyer failed to pay him amounts promised for work on various development projects. *Id.* On appeal to the supreme court, one of the issues was whether there was legally sufficient evidence of an informal fiduciary relationship between Meyer and Cathey. *Id.*

In concluding there was no evidence of such a relationship, the court began by stating the law required that for a fiduciary relationship to exist in a business context, the alleged special relationship of trust and confidence had to exist before and apart from the agreement made the basis of the current lawsuit. *Id.* at 331. The court then turned to the evidence, holding there was no evidence of such a preexisting relationship between Meyer and Cathey. *Id.* It held the court of appeals' reliance on Meyer's and Cathey's work on prior projects was misplaced, finding the earlier projects were arms–length transactions entered into for the parties' mutual benefit, and therefore did not establish a basis for a fiduciary relationship. *Id.* (citing *Associated Indem. Corp.*, 964 S.W.2d at 288 (holding that preexisting indemnity agreement between surety and contractor "was an arms–length transaction entered into for the parties' mutual benefit" and thus did not "justify[ ] a special relationship of trust and confidence.")).

Moreover, the supreme court held the fact that Cathey trusted Meyer did not transform their business arrangement into a fiduciary relationship because subjective trust was insufficient to transform an arm's–length transaction into a fiduciary relationship. *Id.* Nor could the court justify imposing a fiduciary duty based on the fact that, for four years, Cathey and Meyer were friends and frequent dining partners. *Id.* (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595 (Tex. 1992) (superseded on other grounds by statute) ("[T]he fact that the relationship has been a cordial one, of long duration, [is not] evidence of a confidential relationship.")).

The summary judgment evidence in this case is more scant than that found by the supreme court in *Meyer* to be no evidence of an informal fiduciary relationship. Here, Furgason, the agent for Chicago Title, dated Scott years ago, and had a close relationship with Alexander. Pursuant to *Meyer*, this is insufficient to impose a fiduciary duty. *See id.* And, although the parties had prior arm's–length transactions, i.e., prior real estate or loan closings, those transactions, by Scott's own testimony, were for the parties' mutual benefit—Construction Financial received services from a title company and Chicago Title received a fee for those services. Again, pursuant to *Meyer*, this is insufficient to establish a preexisting relationship of trust and confidence so as to permit imposition of a fiduciary duty. *See id.* Thus, *Meyer* supports the trial court's finding of no evidence of a fiduciary relationship between Construction Financial and Chicago Title.

In support of the existence of a fiduciary relationship, Construction Financial discusses the irrelevancy of the failure to pay a fee, the existence or non-existence of a true closing, the provision of "closing" documents to Furgason prior to the completion of the loan transaction, and the alleged oral agreement to file the deed of trust. However, these factors and the arguments relating thereto have no relevance as to whether an informal fiduciary relationship existed given the applicable law. Rather, we must look to the evidence concerning the parties' relationship as it existed prior to this specific transaction. *See id.* Neither fees, paid or not, documents provided, nor agreements relating to the transaction at issue are part of that consideration as they do not relate to the parties' prior relationship.

Based on the applicable law and the absence of summary judgment evidence concerning the parties' prior dealings and relationship, we hold there is not a scintilla of evidence to suggest the existence of an informal fiduciary relationship between Construction Financial and Chicago

Title. Accordingly, we hold the trial court properly granted summary judgment in favor of Chicago Title on the claim for breach of fiduciary duty.

### *Negligence*

Construction Financial alleged Chicago Title was negligent in misfiling the deed of trust. Chicago Title filed a traditional motion for summary judgment claiming Construction Financial's negligence claim was barred by limitations.[4] In support of the motion, Chicago Title produced the original petition, which was filed by Construction Financial on July 6, 2010, and the deed of trust, which showed it was "scanned" on April 4, 2007. In response, Construction Financial amended its petition, asserting it did not discover the deed of trust was improperly filed in Bexar County until August 2008, less than two years before suit was filed. Construction Financial claimed it only learned of the mistake when it attempted to foreclose on the property. Chicago Title responded by amending its motion for summary judgment and arguing the discovery rule did not apply because as a matter of law Construction Financial's injury was not "inherently undiscoverable." The trial court granted summary judgment in favor of Chicago Title based on its affirmative defense of limitations.

Construction Financial's negligence claim is subject to a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2012). Generally, the statute of limitations begins to run when a particular cause of action accrues. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). Sometimes, the date a cause of action accrues is defined. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (stating cause of action for wrongful death "accrues on the death of the injured person."). "Most often, however, the definition of accrual is not prescribed

---

[4] Chicago Title also filed a no evidence motion as to the negligence claim and, in its traditional motion for summary judgment, alleged other grounds for summary judgment. The trial court, however, granted summary judgment only on the affirmative defense of limitations and specifically denied all other grounds for summary judgment raised by Chicago Title with regard to the negligence claim.

by statute and thus has been left to the courts." *S.V.*, 933 S.W.2d at 4. In those instances, courts have generally held that a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later. *Id.* Sometimes, however, a cause of action does not accrue until the plaintiff "knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Id.* This exception was first referred to by the supreme court as the "discovery rule" in *Gaddis v Smith*, 417 S.W.2d 577, 578 (Tex. 1967). *Id.*

In *S.V.*, the supreme court discussed the contexts in which it had applied the discovery rule and the principles behind it. *See id.* at 5–7. The court held that the unifying principle in those cases in which it had found the discovery rule applicable was that in each of those cases, "the nature of the injury incurred [was] inherently undiscoverable and the evidence of injury [was] objectively verifiable." *Id.* at 6 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). The common thread in such cases was the wrong and the injury were unknown to the plaintiff because of their very nature, not because of any fault of the plaintiff. *S.V.*, 933 S.W.2d at 7.

The supreme court held that to be "inherently undiscoverable," an injury did not have to be "absolutely impossible to discover." *Id.* And, the court held it did not mean "merely that a particular plaintiff did not discover his injury within the prescribed period of limitations." *Id.* Rather, discovery of a particular injury is dependent not only on the nature of the injury, "*but on the circumstances in which it occurred and plaintiff's diligence as well*." *Id.* (emphasis added). In other words, "[a]n injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* (citing *Computer Assocs.*, 918 S.W.2d at 456); *see Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001). Whether an injury is inherently undiscoverable is a question of law for the court, *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008), and is determined on a

categorical basis, focusing on whether the plaintiff's general type of injury was discoverable. *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001). The question is decided in this manner because it "brings predictability and consistency to the jurisprudence." *Id.*

Here, the issue is whether, as a matter of law, Construction Financial's injury, i.e., the misfiling of the deed of trust, was inherently undiscoverable. If so, the discovery rule is applicable and having failed to negate it, Chicago Title was not entitled to summary judgment. However, if the injury was not inherently undiscoverable, the discovery rule is inapplicable and summary judgment in favor of Chicago Title was proper.

Chicago Title argues the misfiling of the deed of trust was not inherently undiscoverable. Indeed, it points to the testimony of Construction Financial's president, Scott, who admitted that if he had looked at the Medina County records, he would have discovered the deed of trust was not filed. Clearly, Construction Financial could have discovered the misfiling if it had looked, but for purposes of the discovery rule, the question is whether Construction Financial was required to look to satisfy due diligence. Chicago Title seems to contend that the recording of a document in the county deed records, even in the wrong county, serves to place the world on constructive notice of the filing. We disagree.

None of the cases cited by Chicago Title establish a sweeping rule that public availability of information relating to a potential claim renders the claim not inherently undiscoverable. And, in fact, the supreme court has held that although the purpose of the recording statute is to put all persons on notice of the existence of a filed instrument, it did not mean a failure to search such records would bar an action against a seller. *Ojeda de Toca v. Wise*, 748 S.W.2d 449, 451 (Tex. 1988). When the question of title was not the issue, the supreme court held there was no valid reason for the tortfeasor to escape liability. *Id.* The court went on to hold imputed notice

under the real property recording statute was not a defense to fraud or violations of the DTPA. *Id.* Thus, the plaintiff's failure to search the real property records was not a bar to suit.

Although *Ojeda de Toca* was decided in the context of fraud and DTPA claims, the Amarillo Court of Appeals applied the same logic in a limitations case. *See Cox v. Clay*, 237 S.W.2d 798 (Tex. Civ. App.—Amarillo 1950, writ ref'd n.r.e.). In *Cox*, a mother transferred her interest in certain property to one of her sons, Cager Cox, without his knowledge. *Id.* at 799–800. The deed was filed in the county deed records. *Id.* at 800. Sometime thereafter, another son purchased all of the interests in the property from his brothers and sisters. *Id.* Cager Cox believed he was transferring only a small interest in the property to his brother, having no knowledge of the conveyance to him from his mother. *Id.* Ultimately, when Cager Cox discovered that he had really transferred a great deal more to his brother than he believed he had, he sued for reformation and correction so as to transfer only that small portion he intended to transfer. *Id.* The defendants asserted limitations as a defense. *Id.* Cager Cox responded that he did not discover the mistake until less than two years before he filed suit. *Id.* at 802.

The court of appeals held that despite the fact the deed from mother to Cager Cox was recorded, this did not preclude application of the discovery rule. *Id.* at 803. The court held that notice provided by recorded instruments carries notice only to "those who are bound to search for it, such as subsequent purchasers under the grantor in such an instrument." *Id.* at 804. Moreover, the court held Cager Cox was not required, for purposes of diligence, to investigate and search the county deed records because there was no evidence of any circumstances known to Cager Cox that would have reasonably suggested to him that he should inquire. *Id.* at 804. As the court stated, the evidence was "wholly lacking" of any circumstance or any event that would have "in the remotest degree," suggested to Cager Cox that he needed to search the county deed records before he conveyed to his brother the only interest he believed he owned. *Id.*

Although *Ojeda de Toca* and *Cox* support our holding that the discovery rule is applicable in this case, the federal court's decision in *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 747 F. Supp.2d 794 (S.D. Tex. 2010) places our holding on firm ground. In *Flores*, the federal district court was faced with the identical argument propounded by Chicago Title in this case with regard to deed records and inherent undiscoverability.

In that case, the plaintiffs claimed the defendants had filed forged and improperly notarized liens against their property. *Id.* at 799–800. The defendants moved for summary judgment alleging, among other things, the plaintiffs' claims were barred by limitations and the discovery rule was inapplicable because the plaintiffs' claims were not inherently undiscoverable. *Id.* at 804–06. The defendants argued the liens were not inherently undiscoverable because "they were filed in the public land records of Jim Wells County and as such were discoverable through the exercise of reasonable diligence." *Id.* at 806. Thus, the plaintiffs could have discovered them at any time if they had simply looked. The defendants claimed that "matters appearing in the public record are not, by definition, inherently undiscoverable, even if their appearance in the record does not charge the world with constructive notice." *Id.*

The federal court rejected the defendants' argument, holding the plaintiffs had no reason to suspect their property would become the subject of a lien, and therefore could not be said to "automatically have a duty to search the land records to discover such a lien." *Id.* at 808. Public recording did not impose on the plaintiffs a duty to search those records absent circumstances giving them some reason to perform such a search. *Id.* Accordingly, the court held the plaintiffs' injury was generally the type that could not be discovered by reasonable diligence, rendering it inherently undiscoverable. *Id.* The plaintiffs, who acted with reasonable diligence, were therefore entitled to the application of the discovery rule. *Id.*

*Flores* is on point with regard to the issue of inherent undiscoverability raised in this case. Here, Construction Financial acted with reasonable diligence in completing the transaction at a title company and asking a representative of the title company, who had filed hundreds of documents in the county deed records, to file the deed of trust. The deed of trust identified Medina County as the proper county in capital letters in two different places on the first page of the document. Furgason admitted the deed of trust should have been filed in Medina County, verifying she knew where to file it. Construction Financial did not rely on an inexperienced company for the filing service, but on a company it had done similar business with on numerous occasions, without a problem.

The purpose of filing the deed of trust was to notify any subsequent lenders of Construction Financial's prior lien, not to notify Construction Financial of anything. Thus, there was no reason for Construction Financial to search the Medina County deed records to ensure that Chicago Title, a company with many years of experience in such matters, properly filed the deed. Moreover, Chicago Title presented no evidence of any event or circumstance that would have placed Construction Financial on inquiry, such that a search of the deed records was warranted. Just as the court held in *Flores*, we hold the mere act of public recording did not impose on Construction Financial a duty to search the Medina County deed records to ensure proper filing absent circumstances giving the company some reason to perform such a search. *See id.* Accordingly, we hold Construction Financial's injury was generally the type that could not be discovered by reasonable diligence, rendering it inherently undiscoverable. *Id.* We therefore hold the trial court erred in granting summary judgment in favor of Chicago Title based on limitations with regard to Construction Financial's negligence claim.

Chicago Title places great emphasis on *HECI Expl. Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998) to support its claim that Construction Financial's negligence claim was not inherently

undiscoverable. In that case, the supreme court held mineral interest owners, who sued for breach of the lease and negligent misrepresentation, had some obligation to protect their interests, and that with due diligence, they could have discovered their lessee intended to file suit against an adjoining operator. *Id.* at 886. However, this case is distinguishable in that the court relied on the fact that the royalty interest owners had failed to keep sufficiently informed of their interests and had not been diligent in numerous respects with regard to the interests. Although the court noted that the mineral interest owners had not searched the records of the Railroad Commission, where they might have learned of the lawsuit, they had not made any inquiries regarding the lease for years, negating any claim of diligence. *Id.* at 887–88. Thus, at best, the court's holding indicates the availability of public information is but one factor in determining whether mineral interest owners were diligent and whether their claim against a lessee was inherently undiscoverable.

Based on the foregoing, we sustain Construction Financial's issue with regard to the negligence claim and hold the trial court erred in granting summary judgment based on limitations.

### *DTPA– Consumer Status, Limitations*

In its petition, Construction Financial alleged Chicago Title violated the DTPA, which prohibits engaging in "false, misleading, or deceptive acts or practices."[5] In response, Chicago

---

[5] Construction Financial specifically alleged Chicago Title violated the DTPA by: (1) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (2) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; (3) using deceptive representations or designations of geographic origin in connection with goods or services; (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; (5) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (6) disparaging the goods, services, or business of another by false or misleading representation of facts; (7) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and (8) representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced. TEX. BUS. & COM. CODE ANN. § 17.46(a), (b)(2)–(5), (7)–(8), (12), (22) (West 2011).

Title filed a no evidence motion for summary judgment asserting there was no evidence Construction Financial was a "consumer," there was no evidence of any particular "wrongful act" in violation of the DTPA, and there was no evidence of causation or damage. Chicago Title also filed a traditional motion for summary judgment, claiming that as a matter of law Construction Financial was not a consumer and its claims were barred by limitations. In its summary judgment order, the trial court specifically granted summary judgment on Construction Financial's DTPA claim on two bases–one, Construction Financial was not a consumer, and two, Construction Financial's DTPA claim was barred by limitations.[6] The trial court did not rule on Chicago Title's other no evidence grounds.

### Consumer Status

Chicago Title filed both a no evidence and a traditional motion for summary judgment. *See* TEX. R. CIV. P. 166a(c), (i). We address the no evidence motion first. *See Covarrubias v. Diamond Shamrock Refining Co., LP*, 359 S.W.3d 298, 301 (Tex. App.—San Antonio 2012, no pet.) (holding that if nonmovant fails to sustain burden with regard to no evidence motion for summary judgment, there is no need to analyze whether movant's proof satisfied burden for traditional motion for summary judgment) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).

To pursue a claim under the DTPA, a plaintiff must be a consumer. *Bohls v. Oakes*, 75 S.W.3d 473, 478 (Tex. App.—San Antonio 2002, pet. denied); *see* TEX. BUS. & COM. CODE

---

[6] When a trial court grants summary judgment specifically on fewer than all grounds asserted, Rule 166a does not prevent an appellate court from affirming the judgment on other grounds properly raised in the trial court. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). However, to preserve the alternate grounds, the movant must have raised them in the summary judgment proceeding and present them in an issue or cross-point on appeal. *Kelly v. Brown*, 260 S.W.3d 212, 216 (Tex. App.—Dallas 2008, pet. denied) (citing *Cates*, 927 S.W.3d at 926). Here, Chicago Title did not raise cross-points asking this court to consider its alternate grounds for summary judgment in the event we determine the trial court erred in granting summary judgment based on the consumer and limitations grounds. Accordingly, we may not consider the alternate grounds stated in the no evidence motion – no evidence of wrongful acts, causation, or damage. *See id.*

ANN. § 17.50(a). Thus, an essential element of a DTPA claim is consumer status. *Bohls*, 75 S.W.3d at 478–79. Whether the plaintiff is a consumer is a question of law to be determined by the court from the evidence.[7] *Mosk v. Thomas*, 183 S.W.3d 691, 696 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 133 (Tex. App.—Corpus Christi 2001, no pet.).

A "consumer" is defined under the DTPA as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4). Thus, to qualify as a consumer, a plaintiff must (1) seek to acquire or acquire good or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint. *Bohls*, 75 S.W.3d at 479. This court has held that "[c]onsumer status is established merely by seeking to acquire services, even if the services are not actually acquired, and no money need change hands to establish consumer status." *Id.* Thus, in the case before us, it was not necessary to have a written agreement between Construction Financial and Chicago Title, or an actual purchase of services, and the absence of consideration is irrelevant. *See id.* It is enough to establish consumer status if Construction Financial sought to acquire Chicago Title's services in good faith. *See id.*

Chicago Title claimed there was no evidence Construction Financial was a consumer. Construction Financial disagrees, arguing it produced more than a scintilla of evidence to show it sought to acquire Chicago Title's services. In support, Construction Financial produced the affidavit of its president, Scott, who testified: (1) Construction Financial "invariably" closes its loans at title companies, even when title insurance is not needed; (2) Construction Financial

---

[7] In the event of a jury trial, the underlying factual basis giving rise to consumer standing may present factual issues for the jury. *City State Bank of Palacios*, 44 S.W.3d at 133; *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 406 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.).

provides useful services at such closings beyond title insurance by handling the paperwork; (3) Construction Financial "desired to close the second loan transaction at a title company," even though there was no need for a title insurance policy given that one had been issued two months before in connection with the first loan; (4) Construction Financial had used Chicago Title for other closings and agreed to use the company at Wren's suggestion; (5) he had a Construction Financial employee deliver closing instructions to Chicago Title; (6) he had Construction Financial's attorneys prepare the loan documents and a bill and send them to Chicago Title; (7) Furgason agreed, when the parties met at Chicago Title to sign the documents, that she would file the deed of trust, as well as a financing statement; and (8) he was unaware Wren was not going to pay a fee for the closing, which would normally be the buyer's responsibility; and if he had known, he would have insisted the fees be paid. Chicago Title insists Scott's statements are no evidence that Construction Financial sought services from Chicago Title so as to give Construction Financial consumer status. We disagree.

Scott clearly testified Construction Financial wanted title company services, in this case Chicago Title's services, to complete the loan transaction with Wren. He stated this is Construction Financial's ordinary practice. But more than his statements, Construction Financial had closing and loan documents sent to Chicago Title in advance, evidencing an intent to acquire services from Chicago Title. Moreover, Scott was unaware of the alleged "courtesy" arrangement, expecting Wren, as the borrower, to pay for the services provided by Chicago Title. Construction Financial argues Scott's "subjective belief" that he sought to acquire services is no evidence in light of the fact that there was no "written or oral agreement" with Chicago Title, and all actions by Chicago Title were undertaken gratuitously, with no consideration passing to Chicago Title.

The law requires we view the transaction from the plaintiff's point of view. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984); *White v. Mellon Mortg. Co.*, 995 S.W.2d 795, 801 (Tex. App.—Tyler 1999, no pet.). Moreover, as noted above, this court has specifically held the absence of an agreement or consideration does not negate consumer status. *Bohls*, 75 S.W.3d at 479. Accordingly, Chicago Title's evidence that there was no agreement, no consideration, and Furgason acted merely as a favor for Alexander is not determinative with regard to a finding of consumer status. *See id.* Rather, all Construction Financial need provide is more than a scintilla of evidence that it sought to acquire a service from Chicago Title, which we hold it did. Accordingly, we hold the trial court erred in granting Chicago Title's no evidence motion for summary judgment on Construction Financial's DTPA claim based on an absence of consumer status.

Having determined Construction Financial produced more than a scintilla of evidence to defeat the no evidence motion for summary judgment on consumer status under the DTPA, we now turn to Chicago Title's traditional motion for summary judgment on this issue. However, we arrive at the same result. In support of its traditional motion for summary judgment, Chicago Title produced summary judgment evidence that there was no written or oral agreement between the parties with regard to goods or services of any kind, no evidence of any consideration from either Construction Financial or Wren to Chicago Title, and in fact, the evidence shows Furgason provided her services gratuitously, as a courtesy. Chicago Title also asserts there was no evidence of any oral or written communications regarding any services.

This evidence does not establish an absence of consumer status under the DTPA as a matter of law. We refer back to this court's decision in *Bohls* in which we specifically held "[c]onsumer status is established merely by seeking to acquire services," "no money need change hands," and no agreement to purchase services is necessary. *Id.* Rather, it is sufficient if the

plaintiff sought to acquire services in good faith. *Id.* As to Chicago Title's claim that there was no oral or written communications regarding any services, we must disagree. In his affidavit, Scott averred that he directed an employee and his attorneys to provide documents to Chicago Title, through Furgason, with regard to closing the loan transaction. The documents, which were attached to his affidavit, show they were sent to Chicago Title for the purpose of concluding the loan transaction. Considering the evidence provided by Chicago Title in support of its traditional motion for summary judgment in the light most favorable to Construction Financial, the nonmovant, and indulging all reasonable inferences from the evidence in favor of Construction Financial, we cannot say Chicago Title negated Construction Financial's consumer status as a matter of law. Therefore, we hold the trial court erred in granting Chicago Title's traditional motion for summary judgment with regard to this issue.

*Limitations*

Chicago Title also filed a motion for summary judgment in which it claimed that, as a matter of law, Construction Financial's DTPA claims were barred by limitations. In support of the motion, Chicago Title produced the original petition, which was filed by Construction Financial on July 6, 2010, and the deed of trust, which showed it was "scanned" on April 4, 2007. In response, Construction Financial amended its petition, asserting it did not discover the deed of trust was improperly filed in Bexar County until August 2008, less than two years before suit was filed. Construction Financial claimed it only learned of the mistake when it attempted to foreclose on the property.

All DTPA actions "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." TEX. BUS. & COM. CODE ANN. § 17.565. As

the summary judgment movant on the limitations issue, and because Construction Financial pled the discovery rule, Chicago Title had the burden to: (1) conclusively prove when Construction Financial's DTPA claim accrued, (2) negate the discovery rule by proving as a matter of law there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence, should have discovered the nature of its injury. *Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333, 336 (Tex. App.—San Antonio 2000, no pet.).

Generally, a cause of action accrues and limitations begin to run when a wrongful act causes a legal injury. *Id.* However, the discovery rule always applies to DTPA claims. *Id.* The rule defers accrual of a DTPA cause of action until the consumer discovered or with reasonable diligence could have discovered the allegedly false or deceptive act of practice. *Id.* Here, based on Construction Financial's own pleadings, the DTPA cause of action, which was based on the misfiling of the deed of trust, occurred on or about April 4 or 5, 2007, when Chicago Title scanned the deed of trust and emailed to the Bexar County clerk for filing, as opposed to forwarding it to a local title company for filing in Medina County. Accordingly, Construction Financial's DTPA claims are clearly barred by the two-year limitations period set forth in section 17.565; the survival of the claims hinges on the application of the discovery rule. *See* TEX. BUS. & COM. CODE ANN. § 17.565.

Based on our review of the summary judgment evidence, we hold Chicago Title failed to produce evidence negating the discovery rule as a matter of law. It is undisputed Construction Financial did not actually discover that the deed of trust had been misfiled until August 2008. Therefore, Chicago Title had to prove Construction Financial could have discovered, in the exercise of reasonable diligence, the misfiling before the expiration of the limitations period. In its motion for summary judgment on this issue, Chicago Title argues Construction Financial could have discovered the deed of trust was misfiled if it had only looked at the public records.

In support of this, Chicago Title relies on summary judgment from Scott in which he admits that if Construction Financial had looked, it would have discovered the misfiling. Although clearly Construction Financial could have discovered the misfiling if it had looked, Chicago Title produced no evidence that Construction Financial should have looked or was required to do so. There is no evidence of any event or action that might have put Construction Financial on inquiry with regard to the filing of the deed of trust. Scott testified he received a copy of the deed of trust a day or two after the documents were signed, but it did not indicate where the document had been filed. However, in capital letters on the front page of the deed of trust it stated, "THE STATE OF TEXAS COUNTY OF MEDINA," and within the document the property was described in capital letters as being situated in Medina County. This would have led Construction Financial to believe the document was properly filed in Medina County.

Chicago Title again relies on *HECI Expl. Co. v. Neel* for the proposition that Construction Financial had an obligation to ensure the deed of trust was properly recorded. 982 S.W.2d at 881. That case is distinguishable. In *Neel*, the court was determining whether the discovery rule applied to a royalty interest owner's claims for breach of contract and misrepresentation based on the lessee's failure to notify him that an adjoining operator had injured the common oil and gas reservoir. *Id.* at 886–88. For the discovery rule to apply in such a case, the injury had to be "inherently undiscoverable," i.e." unlikely to be discovered within the prescribed limitations period, despite due diligence. *See S.V.*, 933 S.W.2d at 7; *Computer Assocs. Int'l*, 918 S.W.2d at 456. The court held that because mineral interest owners have "some obligation to exercise reasonable diligence in protecting their interests," the royalty interest owner's injury was not "inherently undiscoverable," and therefore the discovery rule was inapplicable. *Neel*, 982 S.W.2d at 886–88.

The claim in this case, however, is a claim under the DTPA. The requirement of "inherent undiscoverability" does not apply to a DTPA claim because the Legislature wrote the "discovery rule" into the DTPA statute, and therefore it applies to all DTPA claims. *LaGloria Oil and Gas Co. v. Carboline Co.*, 84 S.W.3d 228, 238 (Tex. App.—Tyler 2001, pet. denied); *Pecan Valley Nut Co., Inc. v. E.I. du Pont de Nemours & Co.*, 15 S.W.3d 244, 247 (Tex. App.—Eastland 2000, judg. vacated, remanded by agr.). Thus, *Neel* is inapposite and does not support Chicago Title's position.

Chicago Title also cites a 1918 case from this court, *Alamo Trust Co. v. Cunningham* for the same proposition. 203 S.W. 413 (Tex. Civ. App.—San Antonio 1918, dism'd w.o.j.). That case, however, holds only that a vendor has no duty to record his deed to preserve his vendor's lien when an innocent purchaser relied upon a forged deed by the vendee. The case has nothing to do with discoverability.

Based on the foregoing, we hold Chicago Title failed to negate the discovery rule as a matter of law. Because the discovery rule applied to the DTPA claim, and Chicago Title failed to prove as a matter of law that Construction Financial, in the exercise of reasonable diligence, should have discovered the misfiling within the limitations period, we hold the trial court erred in granting summary judgment on the DTPA cause of action based on limitations.

### *Breach of Contract*

Construction Financial brought a breach of contract claim against Chicago Title, alleging Chicago Title "entered into an oral agreement to close the loan transaction between" Construction Financial and Wren by "notarizing the various documents and filing them of record." Chicago Title filed no evidence and traditional motions for summary judgment and in both alleged there was no evidence of consideration to support an alleged contract. The trial

court granted Chicago Title's no evidence motion for summary judgment on the breach of contract claim, finding there was no consideration from Construction Financial to Chicago Title.[8]

To establish a breach of contract claim, a plaintiff must prove: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach by the defendant, and (4) damages to the plaintiff as a result of the breach. *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61 (Tex. App.—San Antonio 2005, pet. denied). A valid and enforceable contract requires an offer, an acceptance, a meeting of the minds, and sufficiently certain terms. *Id.* In addition, "consideration is a fundamental element of any valid contract." *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied).

It is undisputed that Chicago Title did not receive any monetary compensation for the services performed by Furgason—notarization and filing—with regard to the loan transaction. Rather, the summary judgment evidence shows Furgason volunteered her services as a courtesy to Alexander. Scott testified that Wren, as the borrower, was responsible for any fees, and he was unaware Furgason had acted without any monetary payment to Chicago Title. He stated that if he had known, he would have insisted the fees be paid. Nevertheless, no fees were paid.

Construction Financial argues consideration need not be monetary. This proposition is correct; however, for consideration to exist there must be either a benefit to the promisor or a detriment to the promisee. *Rice v. Metropolitan Life Ins. Co.*, 324 S.W.3d 660, 671 (Tex. App.—Fort Worth 2010, no pet.); *Angelou v. African Overseas*, 33 S.W.3d 269, 280 (Tex.

---

[8] Although "failure of consideration is an affirmative defense," *see* TEX. R. CIV. P. 94, lack of consideration, as alleged here, is not. *S.M. Wilson & Co. v. Urban Concrete Contractors*, No. 04-06-00227-CV, 2007 WL 1423881, at *3 (Tex. App.—San Antonio May 15, 2007, pet. denied) (mem. op.) (citing *Belew v. Rector*, 202 S.W.3d 849, 854 (Tex. App.—Eastland 2006, no pet.)). Lack of consideration is not an affirmative defense because it does not provide an independent reason to file against the plaintiff; rather, it goes directly to the plaintiff's cause of action. *Id.* Accordingly, Chicago Title was not prohibited from filing a no evidence motion for summary judgment on the lack of consideration. *See Kelly*, 260 S.W.3d at 216 (holding party cannot file no evidence motion for summary judgment based on affirmative defense on which it has burden of proof).

App.—Houston [14th Dist.] 2000, no pet.); *City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887, 888 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.). The question is whether Construction Financial presented more than a scintilla of evidence of a benefit to Chicago Title. We hold it did not.

Construction Financial argues there was a benefit to Chicago Title in the form of "good will." More specifically, Construction Financial contends that by performing the requested services for Construction Financial and Wren, Chicago Title "increased the likelihood that [Construction Financial] and [Wren] would bring subsequent transactions that involved the sale of title insurance policies to Chicago Title rather than to one of its competitors." Assuming without deciding that "good will" is a sufficient benefit to constitute good and valuable consideration for purposes of a contract under the circumstances in this case, Construction Financial provided no evidence that Chicago Title gained any good will by assisting Construction Financial in the transaction. Construction Financial presented no evidence it would bring subsequent business to Chicago Title as opposed to other title companies. In fact, Scott, president of Construction Financial, testified Construction Financial "seldom pick[ed]" the title company used in such transactions. Rather, Construction Financial usually deferred to the choice of title company made by the borrower. And, it is undisputed that in this case Chicago Title was chosen by Wren. Additionally, the evidence established Construction Financial used Chicago Title for many of its closings and expected fees to be paid in such circumstances. Scott clearly testified that if he had known no fees were to be paid, he would have insisted on payment by Wren. This belies Construction Financial's claim that if Chicago Title had refused to assist in the transaction in the absence of a fee, Construction Financial would have taken its future business elsewhere.

Accordingly, because Construction Financial presented no evidence of valuable consideration, a required element in a breach of contract action, we hold the trial court properly granted summary judgment in favor of Chicago Title on Construction Financial's breach of contract claim.

## CONCLUSION

Based on the foregoing, we hold trial court properly granted summary judgment in favor of Chicago Title on the breach of fiduciary duty and breach of contract claims, but erred in granting summary judgment in favor of Chicago Title on Construction Financial's claims for negligence and violations of the DTPA. Accordingly, we affirm the portion of the summary judgment in favor of Chicago Title on Construction Financial's claims for breach of fiduciary duty and breach of contract, but reverse the portion of the summary judgment in favor of Chicago Title on Construction Financial's negligence and DTPA claims and remand those claims to the trial court for further proceedings in accordance with this court's opinion.

Marialyn Barnard, Justice